622 N.E.2d 921 (1993)
In the matter of the Adoption of T.B., Lake County Division of Family and Children Services, Appellant, (Respondent below),
v.
T.B. A/K/A K.A.S., and Donna Jean Sudis, Appellee. (Petitioner below).
No. 45S03-9310-CV-1148.
Supreme Court of Indiana.
October 22, 1993.
*922 Eugene M. Velazco, Jr., Cynthia Hope Kambesis, Gary, for appellant.
John T. Casey, Blaney, Casey & Walton, Rensselaer, for appellee.

ON PETITION TO TRANSFER
KRAHULIK, Justice.
Donna Jean Sudis (Petitioner-Appellee below) seeks transfer after the Court of Appeals reversed the trial court order revoking the adoption of T.B. because the trial court lacked subject matter jurisdiction. In the Matter of Adoption of T.B. (1993), Ind. App., 608 N.E.2d 1006. The Lake County Division of Family and Children Services (Respondent-Appellant below) ("FCS")[1] opposes transfer.

Facts
T.B. was born August 13, 1975. In 1983, T.B. became a ward of FCS when she was removed from the custody of her natural mother and placed in the Carmelite Home for Girls. During three years of visitation, Sudis and T.B. grew fond of each other. Sudis was informed that T.B. was a victim of neglect. In April of 1986, the parental rights of T.B.'s natural mother were terminated. Shortly thereafter, Sudis filed a petition for adoption which was subsequently granted on August 27, 1986.
Sudis reported that during the year following the adoption, typical transition problems occurred. As T.B. entered adolescence, Sudis and T.B. sought counseling at Southlake Center for Mental Health because behavioral problems developed. Eventually, the problems grew worse, and T.B.'s behavior included promiscuity, drinking alcohol, destruction of property, petty theft, deterioration of academic performance and violence toward Sudis. Ultimately, T.B. made death threats against Sudis.
During the summer of 1990, T.B. was admitted to Charter Hospital's adolescent unit. T.B. told the staff about sexual abuse which occurred while she lived with her natural mother. The precise nature of the sexual abuse is not known. T.B. admitted to her guardian ad litem that she did not inform anyone of the abuse until her treatment at Charter Hospital.
In July of 1991, after T.B. ran away from home, Sudis sought the intervention of the Lake County Juvenile Court. The Juvenile Court entered a preliminary order finding T.B. to be a child in need of services and placed T.B. in a residential care facility.
*923 On August 7, 1991, Sudis filed a petition to revoke the adoption in the Lake County Circuit Court, the court which originally granted the adoption. FCS moved to dismiss asserting that the court lacked jurisdiction. After a hearing, the motion was denied. Subsequently, a hearing was held on the petition to revoke the adoption. On March 23, 1992, the trial court entered an order revoking the adoption. The trial court determined that it was the proper forum to hear the petition, that through proper investigation FCS should have learned of the sexual abuse before the adoption, and that it was in the best interests of T.B. to terminate the parent-child relationship.
FCS appealed. The Court of Appeals reversed the trial court after determining that the trial court lacked subject matter jurisdiction. The Court of Appeals held that upon the commencement of a child in need of services ("CHINS") proceeding, exclusive jurisdiction vested in the juvenile court and, thus, no other court could hear a proceeding which conflicted with the juvenile court proceeding.
In granting this petition to transfer, we address the following issues:
(1) Whether the trial court had subject matter jurisdiction to hear the petition; and
(2) Whether the evidence was sufficient to support revocation of the adoption.

Jurisdiction
In her petition to transfer, Sudis argues that the Court of Appeals improperly held that the trial court lacked subject matter jurisdiction. Sudis asserts that subject matter jurisdiction pertains to the general class of cases and not to a particular case. Consequently, argues Sudis, the trial court properly exercised its jurisdiction over the case because the trial court, as a court with probate jurisdiction, had authority to hear adoption matters. Sudis argues that the juvenile court did not have exclusive original jurisdiction over all juvenile matters and, in fact, lacked jurisdiction to hear adoption matters because exclusive jurisdiction had been given to courts with probate jurisdiction.
In response, FCS asserts that the Court of Appeals correctly held that, upon commencement of the CHINS proceeding, exclusive jurisdiction vested with the juvenile court so that no other court could entertain an action which conflicted with the CHINS proceeding. FCS concedes that the juvenile court does not have authority to revoke an adoption, but argues that the action to revoke an adoption must be stayed pending the outcome of the CHINS proceeding involving the same parties. Additionally, FCS asserts that the juvenile court could have addressed the merits of Sudis' petition in conjunction with the CHINS proceeding through an action to terminate the parent-child relationship.
Ind. Code Ann. § 31-3-1-1 through § 31-3-1-12 (West Supp. 1992) establishes the procedure for the adoption of children in Indiana. Jurisdiction for adoption procedures is provided in Ind. Code § 31-3-1-1(a) which states:
Any resident of Indiana desirous of adopting any child less than eighteen (18) years of age, may by attorney of record file a petition with the clerk of the court having probate jurisdiction in the county where the petitioner resides or in which is located any licensed child placing agency or governmental agency having custody of the child, or in the county where the child resides. In any county where there is or may be established a separate probate court, that court has exclusive jurisdiction in all adoption matters.
As a result, a court with probate jurisdiction has the power to enter an order granting an adoption. An order granting an adoption is similar to other judgments in that the rules of law which govern other judgments and decrees also control decrees of adoption. See, M.R. by Ratliff v. Meltzer (1986), Ind. App., 487 N.E.2d 836, 840. Consequently, the trial court retained power over its earlier decree of adoption.
Because a CHINS proceeding was brought on behalf of T.B., the question is raised as to whether the trial court had the *924 authority to act on the petition to revoke adoption while the CHINS proceeding was pending. The juvenile court, pursuant to Ind. Code Ann. § 31-6-2-1.1(a)(2) (West Supp. 1992), has exclusive original jurisdiction over a CHINS proceeding. FCS argues that as a result of the commencement of the CHINS proceeding, a court with probate jurisdiction does not have jurisdiction to adjudicate the adoption matter.
An action for adoption and a CHINS proceeding, however, are separate actions which affect different rights. The CHINS proceeding is directed at helping the child directly by assuring that the child receives necessary assistance. See Ind. Code § 31-6-4-3. Adoption, on the other hand, establishes a family unit. An adoption "severs the child entirely from its own family tree and engrafts it upon that of another." Matter of Adoption of Thomas (1982), Ind. App., 431 N.E.2d 506, 513. As a result of the adoption, the adopted child becomes the legal child of the adoptive parent. In re Visitation of Menzie (1984), Ind. App., 469 N.E.2d 1225, 1227.
The legislature established the jurisdiction of juvenile courts and probate courts. The juvenile court was expressly given jurisdiction over CHINS proceedings and, similarly, a court with probate jurisdiction was expressly given jurisdiction over adoption matters. The power to adjudicate either matter does not divest the other court of its respective jurisdiction. Consequently, a court with probate jurisdiction may adjudicate an adoption matter simultaneously with the juvenile court's adjudication of a CHINS proceeding.
A court with probate jurisdiction has jurisdiction in adoption matters. Ind. Code § 31-3-1-1(a). In Lake County, the circuit court and superior court have concurrent jurisdiction over probate matters. Ind. Code Ann. § 33-4-4-3(a) and § 33-5-29.5-4(a)(1) (West Supp. 1992). The superior court of Lake County is divided into four divisions, civil (including probate), criminal, county, and juvenile. Ind. Code § 33-5-29.5-21(a). The juvenile division does not have jurisdiction in probate matters and, thus, cannot assert jurisdiction in an adoption proceeding. Either the civil division of the superior court or the circuit court could hear the adoption matter. As a result, the Lake County Circuit Court properly exercised its jurisdiction when hearing the petition to revoke adoption.

Revocation of Adoption
As noted above, Ind. Code § 31-3-3-1 through § 31-3-3-12 establishes the adoption procedures in Indiana. The statutes, however, do not directly address the revocation of an adoption. In fact, public policy disfavors a revocation of an adoption because an adoption is intended to bring a parent and child together in a permanent relationship, to bring stability to the child's life, and to allow laws of intestate succession to apply with certainty to adopted children. Risner v. Risner (1963), 243 Ind. 581, 582 n. 1, 189 N.E.2d 105, 106; Rhodes v. Shirley (1955), 234 Ind. 587, 596, 129 N.E.2d 60, 64. Although public policy abhors the idea of being able to "send the child back," we recognize that an order of adoption is a judgment and may be set aside pursuant to Indiana Trial Rule 60(B). See, e.g., Adoptive Parents of M.L.V. v. Wilkens (1992), Ind., 598 N.E.2d 1054, 1057; State ex rel. Bradshaw v. Probate Court of Marion County (1947), 225 Ind. 268, 273, 73 N.E.2d 769, 772; County Dept. of Pub. Welfare v. Morningstar (1958), 128 Ind. App. 688, 151 N.E.2d 150.
Sudis' petition to revoke the adoption asked the trial court to set aside its earlier judgment of adoption. The petition was premised on the theories that (1) FCS made a material misrepresentation when it failed to disclose that T.B. had been sexually abused prior to adoption and (2) in the best interests of T.B., the adoption should be revoked. Sudis asserts that Indiana's juvenile laws recognize the power of the trial court to terminate the parent-child relationship and that the effect of the trial court's revocation of its order of adoption is to terminate the parent-child relationship. On the other hand, FCS asserts that once an adoption has been granted, it cannot be revoked unless the party seeking to revoke the adoption establishes that the adoption *925 was procured through fraud. Additionally, FCS asserts that the factual findings of the trial court are not supported by the evidence because, although the trial court could conclude that T.B. had substantial emotional problems, it could not conclude that T.B. was not suitable for adoption.
In order to set aside the order of adoption based on fraud, "there must be a material misrepresentation of past or existing fact made with knowledge or reckless disregard for the falsity of the statement, and the misrepresentation must be relied upon to the detriment of the relying party." Adoptive Parent of M.L.V. v. Wilkens (1992), Ind., 598 N.E.2d 1054, 1058. Sudis alleges that the failure of FCS to inform her of the sexual abuse of T.B. which occurred prior to the adoption establishes fraud.
The evidence produced at the hearing included that T.B. never admitted the sexual abuse until she received counseling at Charter Hospital during the summer of 1990, that T.B. was removed from her natural mother's care due to neglect, that the precise nature of the sexual abuse is not known, and that T.B.'s natural mother denied all allegations of sexual abuse. The trial court made the following factual determinations:
13. That the Lake County Department of Public Welfare, through proper investigation, should have discovered the existence of and determined the extent of said abuse.
14. That the Lake County Department of Public Welfare failed to inform Petitioner of the extent of abuse the child suffered prior to the adoption.
Although the record may support a finding that FCS acted negligently in failing to discover the alleged sexual abuse, it does not support a finding that FCS committed fraud. Consequently, the attempt to set aside the adoption based upon fraud must fail.
Sudis' petition also asserted that it was in the best interests of T.B. to terminate the relationship. Sudis, however, is not the proper party to bring an action to terminate the parent-child relationship. See Ind. Code Ann. §§ 31-6-5-2, 31-6-5-4 (West Supp. 1992). Because Sudis was not the proper party to bring the action, the merits of the action were not properly before the trial court. If at some future date the guardian ad litem or other party provided by statute chooses to bring the action, the merits could then be properly adjudicated by the trial court. Ind. Code § 31-6-5-4.

Conclusion
Accordingly, we grant transfer, vacate the opinion of the Court of Appeals, reverse the trial court's judgment, and remand to the trial court to enter judgment against the petitioner.
SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.
NOTES
[1] This agency was formerly known as the Lake County Department of Public Welfare, but the name has been changed. As a result, we will refer to the agency by its present name.