**Julie MARIGA, Appellant–Respondent,**

v.

**Lori FLINT, Appellee–Petitioner.**

**In the Matter of the Adoption of Two Minor Children, Julie R. Mariga, Appellant–Petitioner,**

v.

**Lori Flint, Appellee–Respondent.**

**No. 79A02–0407–CV–612.**

Court of Appeals of Indiana.

Feb. 16, 2005.

Christopher D. Corrigan, Sean M. Pers, Withered Corrigan & Burns, Lafayette, IN, Attorneys for Appellant.

Earl McCoy, The Law Office of Earl McCoy III, Lafayette, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

This case requires us to examine the nature of parenthood. Whether a parent

is a man or a woman, homosexual or heterosexual, or adoptive or biological, in assuming that role, a person also assumes certain responsibilities, obligations, and duties. That person may not simply choose to shed the parental mantle because it becomes inconvenient, seems ill-advised in retrospect, or becomes burdensome because of a deterioration in the relationship with the children's other parent. To the contrary, of key importance is the relationship between parent and children, not between parent and parent. What we must focus on is the duties owed by a parent to her children, and those duties do not evaporate along with the relationship between the parents—indeed, those duties do not evaporate even if the relationship between parent and children deteriorates.

Appellant-respondent Julie Mariga appeals from two orders: the Tippecanoe County Superior Court's (Superior Court) order granting appellee-petitioner Lori Flint's Petition for Child Support and the Tippecanoe County Circuit Court's (Circuit Court) order denying Julie's Petition to Vacate Adoption.[1]

Julie argues that the Circuit Court erred in denying her petition to vacate the adoption. Specifically, Julie raises the following arguments with respect to the Adoption Order: (1) the Circuit Court did not have the authority to grant Julie's Petition for Adoption because the same-sex partner of a biological parent cannot be a stepparent pursuant to the stepparent adoption statute; and (2) the adoption was procured by fraud because Lori never intended for

her relationship with Julie to be a lifelong commitment.

The Child Support Order requires Julie to pay child support for her adopted children, who are the biological children of Lori, Julie's ex-significant other. Specifically, Julie raises the following arguments with respect to the Child Support Order: the Superior Court did not have subject matter jurisdiction, and Lori failed to state a claim upon which relief may be granted because (1) the Circuit Court, rather than the Superior Court, had exclusive jurisdiction over the adoption and child support determinations; (2) the Superior Court previously dismissed Lori's petition with prejudice, preventing it from re-opening the matter; and (3) Lori's petition was improperly captioned and not verified.

Finding that this court has previously determined that a person may validly adopt the children of her same-sex partner without divesting the partner of any parental rights, that as a result Julie is a parent to Lori's children, and that the adoption was not procured by fraud, we affirm the judgment of the Circuit Court. Additionally, finding that the Superior Court properly exercised its jurisdiction over Lori's petition for child support and that she did not fail to state a claim upon which relief may be granted, we affirm the judgment of the Superior Court.

## FACTS

Lori is the biological mother of a 16–year–old daughter and a 13–year–old son. In 1992, Lori and the children's biological father divorced, and, shortly thereafter,

1. Julie timely appealed from the Superior Court's order requiring her to pay child support, and the case was assigned Cause Number 79A02–0407–CV–612. Then, Julie timely filed a Notice of Appeal from the Circuit Court's order denying her petition to vacate adoption. In the interests of judicial econo-

my, Julie filed—and we granted—a Motion to Consolidate the two cases on appeal. On November 12, 2004, after all of the briefs had been filed in the original appeal, we consolidated the two cases into Cause Number 79A02–0407–CV–612.

Lori and Julie began a romantic relationship. During the course of their relationship, Julie played an active role in the children's lives, attending their sporting events and school conferences.

In 1996, Julie sought to adopt the children pursuant to Indiana's stepparent adoption statute. Ind.Code § 31–19–15–2. Julie and Lori decided that Julie should adopt the children for a variety of reasons, among them Julie's desire to provide financially for the children via life insurance, college assistance, and health insurance,[2] and a hope to solidify their family unit. Lori informed the court that Julie was her "life-time companion" and that she wished to "co-parent" the children with Julie. Appellant's Consol. App. p. 5.[3] The children's biological father agreed to terminate his parental rights to permit Julie to adopt the children without terminating Lori's parental rights. The Tippecanoe County Circuit Court granted her petition for adoption on July 10, 1997, and the children's last names were officially changed to "Mariga–Morris." Appellant's App. p. 43–45. In November 1998, Lori and Julie separated, and since that time both children have remained with Lori.

In June 1999, Lori married a man, and, in January 2000, Lori had a third child with her new husband. On February 8, 2001, Lori filed a Petition to Establish Custody, Visitation, and Support (the "First Petition") in the Tippecanoe County Circuit Court. In June 2001, Lori moved to Georgia with her husband and children because her husband was promoted by his employer and transferred to Georgia. Julie did not challenge Lori's relocation with the children.

After her relationship with Lori ended, Julie visited regularly with the children. But, the visits became sporadic, and she began attending their school activities less frequently. After Lori and the children moved to Georgia, they rarely, if ever, communicated with Julie, and she did not visit them at all during that period of time. Furthermore, while Julie initially paid child support, pursuant to an informal agreement between the parties, she stopped making payments after Lori filed the First Petition. She continues to carry the children on her health insurance plan.

On November 9, 2001, Lori filed a voluntary motion to dismiss her first petition, which the Circuit Court granted on November 13, 2001.[4] On December 10, 2001, Lori filed a Petition to Establish Custody, Visitation, and Support (the "Second Petition") in the Tippecanoe County Superior Court. Following the court's determination that the "home state" of Lori and the children was Georgia, and that, as a result, the State of Indiana did not have jurisdiction at that time over Lori's petition, the court dismissed the Second Petition without prejudice. Appellant's App. p. 17–18.

In October 2003, Lori and her second husband divorced and she moved back to Indiana with her three children. In December 2003, Lori filed a Petition to Re–Open in the Superior Court in light of the fact that Indiana had again become the

2. Apparently, both Julie and Lori believed that the children's biological father did not have a consistent and steady record of employment such that the children could count on his employment benefits.

3. There are two sets of briefs and appendices in this case. We will cite to the first set, regarding the Child Support Order, as Appellant's and Appellee's Briefs, and Appellant's Appendix. We will cite to the second set, regarding the Petition to Vacate Adoption, as Appellant's and Appellee's Consolidated Briefs, and Appellant's Consolidated Appendix.

4. The reasons for the dismissal of the First Petition are not apparent from the record.

"home state" for Lori and her children. The Superior Court granted her petition to re-open. On June 25, 2004, Julie filed an Amended Motion to Dismiss or Stay Proceedings. On June 28, 2004, the Superior Court denied Julie's motion and granted Lori's Petition to Establish Custody, Visitation, and Support. Among other things, the order requires Julie to pay child support in the amount of $290 per week and renders Julie responsible for 75% of the children's uninsured medical, optical, and dental expenses.

While Lori's petition to establish custody, support, and visitation was pending in Superior Court, Julie filed a Petition to Vacate Adoption in the Circuit Court on April 2, 2004. On June 25, 2004, Julie filed an Amended Petition to Vacate Adoption. After a hearing on September 1, 2004, approximately two months after the Superior Court entered its order requiring Julie to pay child support, the Circuit Court denied Julie's petition to vacate the adoptions.

Julie now appeals the Circuit Court's order denying Julie's petition to vacate the adoptions and the Superior Court's order granting Lori's petition for child custody, support and visitation, and denying Julie's motion to dismiss.

## DISCUSSION AND DECISION

### I. Adoption Order

Julie argues that the Circuit Court erred in denying her petition to vacate the adoption. Specifically, Julie contends that: (1) the Circuit Court did not have the authority to grant Julie's Petition for Adoption because the same-sex partner of a biological parent cannot be a stepparent pursuant to the stepparent adoption statute; and (2) the adoption was procured by fraud because Lori never intended for her relationship with Julie to be a life-long commitment.

### A. Circuit Court's Authority

This court has recently decided several cases that are adverse to Julie's contention that the Circuit Court did not have authority to grant her adoption of Lori's biological children. In *In re Adoption of K.S.P.*, 804 N.E.2d 1253 (Ind.Ct.App.2004), we held that a same-sex domestic partner may adopt the biological children of her partner without divesting the parental rights of the biological parent. In *K.S.P.*, Monica Polchert sought to adopt the biological children of her same-sex partner, Linda Lutz. Monica had been a part of the immediate family for seven years, providing "love, support, and day-to-day care" for the children, when she petitioned to adopt the children. *Id.* at 1260. The children's biological father consented to the termination of his parental rights and to Monica's adoption of the children. Monica testified that she loved the children, that she wished to share parental rights and responsibilities with Linda, and that she wished to provide for the children financially—including the ability to place the children on her health insurance policy. *Id.*

The trial court denied Monica's petition, relying on Indiana Code section 31–19–15–1, which provides that when a child is adopted, the rights of living biological parents are divested. On appeal, this court reversed the trial court, emphasizing that "the primary concern in every adoption proceeding is the best interest of the child." *Id.* at 1257. We examined the stepparent adoption statute, which allows stepparents to adopt without divesting biological parents of their parental rights:

(a) If the adoptive parent of a child is married to a biological parent of the child, the parent-child relationship of

the biological parent is not affected by the adoption.

(b) After the adoption, the adoptive father or mother, or both:

(1) occupy the same position toward the child that the adoptive father or the adoptive mother, or both, would occupy if the adoptive father or adoptive mother, or both, were the biological father or mother; and

(2) are jointly and severally liable for the maintenance and education of the person.

I.C. § 31–19–15–2. Although we recognized that a strictly literal reading of these statutes might lead to the conclusion that if Monica's petition were granted it would divest Linda of her parental rights, we determined that "[i]n light of the purpose and spirit of Indiana's adoption laws, . . . the legislature could not have intended such a destructive and absurd result." *K.S.P.*, 804 N.E.2d at 1257. Focusing on public policy and the need to promote stability for children by interpreting the adoption statutes broadly, we concluded that where "the prospective adoptive parent and the biological parent are both in fact acting as parents, Indiana law does not require a destructive choice between the two parents." *Id.*

The facts of *K.S.P.* are remarkably similar to this case. The children are the product of a failed marriage, and their biological father had little involvement in their lives, ultimately agreeing to terminate his parental rights and not objecting to the adoption. The children experienced the majority of their formative years with their biological mother's same-sex partner living in their home, acting as partner to their mother and parent to them. The adoptive parent was significantly involved in the children's day-to-day lives, and it was because of her close relationship to them and to their mother that she chose to adopt them.

Julie fashions her argument by claiming that *K.S.P.* does not apply to this case, but the substance of her argument is that *K.S.P.* should have been decided differently and that we should decline to follow it altogether. She claims that there is no statutory authority for the *K.S.P.* adoption or for her own adoption of the children in this case, but we have already held in *K.S.P.* that the adoption statutes must be interpreted broadly in light of their purpose and spirit. *See also In re Parentage of A.B.*, 818 N.E.2d 126, 131–32 (Ind.Ct. App.2004) (agreement by same-sex couple involved in domestic relationship to conceive child through artificial insemination of one partner, resulted in both partners becoming legal parent of child; the parent-child relationship survived termination of domestic relationship); *cf. In re Adoption of M.M.G.C.*, 785 N.E.2d 267, 270 (Ind.Ct. App.2003) (in the circumstance of a same-sex domestic relationship, this court determined that "[c]onsonant with our General Assembly's policy of providing stable homes for children through adoption, we conclude that Indiana's common law permits a second parent to adopt a child without divesting the rights of the first adoptive parent.").

■ Julie also argues that even if *K.S.P.* applies to this case, we should not apply the decision retroactively because it announced a change in the common law.[5] Generally, "pronouncements of common law made in rendering judicial opinions of civil cases have retroactive effect unless such pronouncements impair contracts

---

5. We note that the precedent for same-sex couple adoption was set prior to the decision in *K.S.P. See M.M.G.C.,* 785 N.E.2d at 270.

made or vested rights acquired in reliance on an earlier decision." *Marsh v. Dixon,* 707 N.E.2d 998, 1001 (Ind.Ct.App.1999) (quoting *Sink & Edwards, Inc. v. Huber, Hunt & Nichols, Inc.,* 458 N.E.2d 291, 295 (Ind.Ct.App.1984)). Here, there is no contract that was impaired, nor did Julie acquire vested rights in reliance on pre-*K.S.P.* law of which she might now be divested. To the contrary, *K.S.P.* merely validated that which she had already asked for and received—the right to adopt Lori's children. *Cf. A.B.,* 818 N.E.2d at 131 n. 3. (explaining that paramount consideration is best interest of children and observing that in context of void marriages, legislature enacted provisions for children to be treated as if they are children of a valid marriage). Thus, we will apply *K.S.P.* retroactively.

Julie next seems to argue that the holding of *K.S.P.* is improper because it does not require the biological and adoptive parents to prove to the court that they are in a committed relationship. According to Julie, the only way for a court to ensure that the parents are in a committed relationship is if they are married, which is an impossible hurdle for same-sex partners to clear in the State of Indiana. She contends that "[i]f a person is going to adopt and share parental responsibilities with another person, the two must be committed to each other to ensure continued love, support, and stability for the children." Appellant's Consol. Br. p. 18.

Since the consolidated causes in this appeal were fully briefed, this court determined that Indiana's Defense of Marriage Act, ("DOMA"), Indiana Code § 31–11–1–1, expressly limiting marriage to opposite-sex couples, is not violative of Indiana's Constitution. *Morrison v. Sadler,* 821 N.E.2d 15, 18–19, 35 (Ind.Ct.App. 2005). In *Morrison,* we concluded, in part:

What we decide today is that the Indiana Constitution does not require the governmental recognition of same-sex marriage, although the legislature is certainly free to grant such recognition or create a parallel institution under that document. Nevertheless, Indiana's DOMA, Indiana Code Section 31–11–1–1, does not violate Article 1, § 23 of the Indiana Constitution because opposite-sex marriage furthers the legitimate state interest in encouraging opposite-sex couples to procreate responsibly and have and raise children within a stable environment. Regardless of whether recognizing same-sex marriage would harm this interest, neither does it further it.

821 N.E.2d at 35.

Of particular importance to our inquiry here is the central theme in *Morrison*—the best interests of children. 821 N.E.2d at 23–35. We recognized that same-sex couples, by necessity, most often make large emotional and financial investments to become parents. 821 N.E.2d at 24. Because of the inability to procreate within the intimacy of a same-sex relationship, same-sex parents often enter into parenthood with great forethought. 821 N.E.2d at 23–25. In *Morrison,* we could not say that the State's goal in promoting the same stability for children of opposite-sex relationships, by promoting opposite-sex marriage through Indiana's DOMA, was irrational. 821 N.E.2d at 29. We acknowledged "that large numbers of same-sex couples in this state are choosing to raise children together, either by adoption or taking advantage of assisted reproduction technologies." 821 N.E.2d at 23–24.

In reviewing the recent decisions on same-sex relationships, the overarching concern is the best interests of children. We must decline Julie's request to alter the course of our recent decisions by di-

recting the focus away from her relationship with her children, and placing the focus upon the relationship of the parents.

Julie seeks "assurance that the persons are committed to each other." Appellant's Consol. Br. p. 18. Unfortunately, as recognized in *Morrison*, the reality of our society is that nothing—not even a marriage certificate—can provide a court with total assurance that a couple is committed to each other and will remain so forever. All that courts can do is inquire into the relationship and trust that the parents are honest with each other and the court as to the reality of their commitment to the new family unit. Here, Julie and Lori had been in a committed relationship for five years when Julie petitioned to adopt Lori's children. Lori informed the Circuit Court that Julie was her "life-time companion" and that the two wished to "co-parent" Lori's children. Appellant's Consol. App. p. 5. Julie, Lori, and the children had formed a family unit at the time that Julie petitioned to adopt the children. That their relationship later deteriorated is of no moment.

Julie argues that the children no longer wished to see her and that they were embarrassed when trying to explain that she is their mother's former lesbian partner. But she is their *parent*. She petitioned the Circuit Court to adopt them, and her petition was granted. As their parent, she has a responsibility to remain in their lives—even if her only contribution is financial.

■ *M.M.G.C., K.S.P., A.B.,* and *Morrison* apply directly to this case, and we see no reason to reach a different result. The Circuit Court had statutory authority to grant Julie's petition to adopt Lori's children, and it had sufficient evidence to conclude that Julie and Lori were in a committed relationship and intended to form a solid family unit. That Julie and Lori

later ended their relationship and that the children are now uncomfortable with Julie's role in their lives is irrelevant. The adoption was valid and proper. Julie sought to be a parent, she is one, and the time has come for her to assume those responsibilities.

### B. Fraud

Julie also contends that the adoption was invalid because it was procured by fraud. Specifically, she contends that Lori was dishonest when she told the Circuit Court that Julie was her life-long partner, that in fact Lori is heterosexual, and that Lori merely desired the financial benefits she and the children would receive if Julie became the children's adoptive parent.

■ As we consider this argument, we note that the decision in this case was the result of a bench trial, and, as such, we will set aside the trial court's findings and conclusions only if they are clearly erroneous. *Wagner v. Spurlock*, 803 N.E.2d 1174, 1179 (Ind.Ct.App.2004). To vacate a decree of adoption based on fraud, there must have been a material misrepresentation of past or existing fact made with knowledge or reckless disregard for the falsity of the statement, and the misrepresentation must have been relied upon to the detriment of the relying party. *In re Adoption of T.B.*, 622 N.E.2d 921, 925 (Ind.1993).

■ The only evidence to which Julie cites to support her claim of fraud is Lori's statement at the hearing on the petition to vacate adoption that she is heterosexual. Appellant's Consol. App. p. 121–22. Julie also points to the fact that after her relationship with Lori ended, Lori began dating—and ultimately married—a man. From these two facts, Julie deduces that "[i]t seems only logical that at the time of the adoption, [Lori] knew that she really

wanted true companionship with a man." Appellant's Consol. Br. p. 23.

Our review of the record reveals that at the time that Julie sought to adopt Lori's children, Lori stated that it was her intention to "co-parent" with Julie, her "life-time companion." Appellant's Consol. App. p. 5. Lori also testified that Julie adopted the children to "solidify the family unit that [they] already had." *Id.* p. 119. That Lori and Julie's relationship later deteriorated, and that Lori may have subsequently rediscovered her heterosexuality, is of no moment. A claim of fraud cannot be premised upon future conduct. *See T.B.*, 622 N.E.2d at 925.

At the time of the adoption, Lori and Julie had been in a committed relationship for five years. By way of comparison, Lori's marriage to the children's biological father lasted only four years, as did Lori's marriage that she entered into after her relationship with Julie ended. There is no evidence that Lori made any knowing or reckless material misrepresentations of a past or existing fact to Julie or to the Circuit Court at the time that Julie petitioned to adopt Lori's children. Accordingly, the Circuit Court's conclusions of law were not clearly erroneous, and it properly denied Julie's petition to vacate the adoption.

## II. Child Support Order

Julie next argues that the Superior Court improperly granted Lori's petition for child support. Specifically, Julie contends that the Superior Court did not have subject matter jurisdiction and that Lori failed to state a claim upon which relief could be granted because (1) the Circuit Court, rather than the Superior Court, had exclusive jurisdiction; (2) the trial court previously dismissed Lori's petition with prejudice, preventing it from re-opening the matter; and (3) the trial court erred in granting Lori's petition because the petition was improperly captioned and not verified. Julie does not question the components of the order, i.e., the amount of child support.[6]

### A. Subject Matter Jurisdiction

Initially, we note that subject matter jurisdiction refers to the power of a court to decide a "class" of cases. To determine whether a court has subject matter jurisdiction, it must inquire whether the claim falls within the general scope of authority conferred on the court by the Indiana Constitution or by statute. When a court lacks subject matter jurisdiction, its actions are void and may be challenged at any time. Whether a lower court had jurisdiction is a pure question of law, and we review the issue de novo. *Kondamuri v. Kondamuri*, 799 N.E.2d 1153, 1156 (Ind. Ct.App.2003), *trans. denied.*

Julie contends that the Superior Court did not have statutory authority to enter the child support award because superior courts "have jurisdiction conferred by statute to order a mother or father to pay child support." Appellant's Br. p. 5. In essence, Julie rehashes her earlier argument to urge that Indiana's statutes do not explicitly provide for child support payments for the biological children of a former same-sex partner. Again, Julie

---

**6.** To the extent that Julie urges that she should not have an obligation to support her adopted children because they have repudiated their relationship with her, her argument must fail. *See Bales v. Bales*, 801 N.E.2d 196, 199 (Ind.Ct.App.2004), *trans. denied*, (recognizing that child's repudiation of parent could obviate parent's obligation to pay certain expenses such as college expenses; "[h]owever, no case has extended that release of a parent's financial responsibility to the payment of child support, and under the current law, it cannot.").

myopically focuses on her relationship with Lori, not her relationship with her children. As explained above, Julie is the adoptive mother of the children.

[13] Our common law and statutory law provided the Superior Court with subject matter jurisdiction to award child support in this case. "[P]arents have a common law duty to support their children." *Bales v. Bales,* 801 N.E.2d 196, 199 (Ind. Ct.App.2004), *trans. denied.* Moreover, our statutes do not predicate the court's jurisdiction upon the status of the parents, as to each other. As indicated above, the stepparent adoption statute, Indiana Code section 31–19–15–2(b), provides in relevant part: "After the adoption, the adoptive father or mother ... (1) occupy the same position toward the child that ... the biological father or mother [would occupy]; and (1) are jointly and severally *liable for the maintenance and education* of the person." (Emphasis added). Unquestionably, an adoptive mother is a mother and is liable for support of the adopted children, all of which is completely unaffected by the adoptive mother's status as the former same-sex domestic partner of the other parent.

Further, child support is of the class of cases that Indiana superior courts have statutory jurisdiction to determine. Indiana Code section 31–12–1–1 allows judges of circuit and superior courts of each judicial circuit to make a yearly determination of the necessity for a court designated as a "domestic relations court." The jurisdiction of domestic relations court is statutory:

(a) Whenever a domestic relations court is established under this chapter, the domestic relations court has jurisdiction over all proceedings in the following causes of action:
1. Dissolution of marriage.
2. Separation.
3. Annulment.
4. Child support.
5. Paternity.

(b) A domestic relations court has jurisdiction that other courts in Indiana have over the causes of action listed in subsection (a). A domestic relations court may dispose of the causes of action listed in subsection (a) in the manner provided by statute for those causes of action. However, this chapter grants supplemental powers to the domestic relations courts to aid the court in determining the difference between the parties and in protecting the welfare and rights of the child or children involved.

Ind.Code § 31–12–1–4.[7] Thus, statutory authority exists for the Superior Court's subject matter jurisdiction over matters concerning child support between parents. That authority extends to supplemental powers to aid it in determining the difference between the parties and in protecting the welfare and rights of the children involved.[8]

Further, our family law statutes provide additional authority for the Superior Court's action in ordering child support. After considering the required statutory factors, a court "may order either parent or both parents to pay any amount reason-

---

7. As of 2004, Indiana Code section 33–33–79.2–6, provides: "Superior court No. 2 of Tippecanoe County has the same original and appellate jurisdiction possessed by the Tippecanoe circuit court in civil and criminal cases, but not in matters of probate.or juvenile jurisdiction."

8. Though not specifically mentioned in the statute, that authority would appear to extend to custody matters.

able for support of a child." Ind.Code § 31–16–6–1(a). Moreover, the court must enter a decree in an action for child support when it finds: "(1) that there is a duty to support by the person alleged to have the duty; (2) that the duty to support has not been fulfilled; and (3) that an order should be entered under IC 31–16–6–1." I.C. § 31–16–2–8(a).

We have already held that Julie's adoption of Lori's children is valid and that the Circuit Court properly refused to vacate that adoption. Accordingly, Julie has assumed all of the rights, duties, and obligations of a biological parent and is a legally recognized "parent" to these children in every sense of the word. As a parent, she is obligated pursuant to civil common law and statutory law to help bear the cost of raising these children. The Superior Court had subject matter jurisdiction, i.e., jurisdiction over the class of cases, to order her to pay child support.

### B. Failure to State a Claim

#### 1. Exclusive Jurisdiction

■ Julie next argues that the Circuit Court, not the Superior Court, had exclusive jurisdiction of all matters regarding the adoption. It is true that the Tippecanoe Circuit Court, as a court of probate jurisdiction, had exclusive jurisdiction regarding the children's *adoption. See* I.C. § 33–28–1–2 (granting circuit courts general civil and criminal jurisdiction), and I.C. § 31–19–1–2(b) (probate courts have exclusive jurisdiction in adoption matters). However, the *child support* order is a matter separate and apart from the adoption. As discussed above, the Superior Court had statutory jurisdiction to consider the matter of child support. As to child support, Circuit Court and Superior Court No. 2 in Tippecanoe County have concurrent or coordinate jurisdiction.

Neither is it of concern that the Circuit Court was first to acquire jurisdiction over the parties when it ruled on the adoption. As to child support, the Circuit Court and Superior Court enjoy concurrent jurisdiction. In short, the Circuit Court was not vested with exclusive jurisdiction over all matters concerning the parties after it ruled on the adoption in 1997. *Cf. Bank One Trust No. 386 v. Zem, Inc.,* 809 N.E.2d 873, 876–77 (Ind.Ct.App.2004), *trans. denied,* (circuit court's issuance of tax deed did not vest exclusive jurisdiction in circuit court; superior court had coordinate jurisdiction such that it could issue subsequent order).

■ It is also true that two courts of coordinate jurisdiction cannot exercise jurisdiction over the same subject matter at the same time. *Artusi v. City of Mishawaka,* 519 N.E.2d 1246, 1249 (Ind.Ct.App. 1988), *trans. denied.* As we have explained, that did not occur here. While the Superior Court child support matter was pending, Julie filed her motion in Circuit Court to vacate the adoption. The Superior Court could not exercise jurisdiction over the adoption matter. Consequently, the two courts were not courts of coordinate or concurrent jurisdiction as to the adoption, and they were not exercising jurisdiction over the same subject matter.

Julie also argues that it is in the interests of "uniformity and confidentiality" that the Circuit Court should have exclusive jurisdiction over all matters concerning this family unit. She cites to no authority for this proposition, however, and we can see no reason why either "uniformity" or "confidentiality" would divest the Superior Court of jurisdiction to hear Lori's action for child support. Accordingly, Lori appropriately brought this petition before the Superior Court.

## 2. *Previous Dismissal*

Julie next contends that Lori's action for child support was previously dismissed with prejudice and, as a result, could not be properly re-opened. On December 10, 2001, Lori filed her Second Petition in the Superior Court. At that time, she was living with her children and husband in Georgia. The Superior Court dismissed her petition, and its order provided, in pertinent part, as follows:

> The Court now FINDS that the 'home state' [sic] is the State of Georgia. That although the children and parties had past connections or relationships with others in Indiana, certainly relationships have developed in Georgia since the children's and biological mother's move to Georgia on June 1, 2001. Presumably the children are and have been in school in Georgia since August, 2001 through present. Given the length of the children's stay in Georgia, this Court cannot find it necessarily in the children's best interest to keep jurisdiction in Indiana. In fact, Georgia is and became the 'home state' of the children prior to the Petition being filed which is now pending.
>
> Therefore, it appears that Georgia is the home state. Georgia is also the more convenient forum as the two children and biological mother reside in Georgia. Any pending Petitions and future Petitions will more likely require the presence of witnesses located in the state of Georgia.
>
> This Court now DISMISSES this case *without prejudice* to the Petitioner's right to request this case be re-opened by the Special Judge and heard. Should the Respondent resist personal jurisdiction in Georgia or should Georgia fail to hear and determine any Petitions files [sic] concerning these two parties, the Petitioner shall inform the Special Judge

> under this cause number and request the case be re-set.
>
> Should this case be re-opened, the Court would consider the request to have any child support retroactive to the date the Petition for Support was filed.

Appellant's App. p. 17–18 (emphasis added).

 From this Superior Court order that specifically states that Lori's petition was dismissed "without prejudice," Julie argues that, in fact, it was dismissed with prejudice. According to Julie, the only two ways in which Lori's petition could be properly re-opened were 1) if Julie resisted jurisdiction in Georgia, or 2) Georgia refused to hear a petition filed there. Our review of the language of the Superior Court's order leads us to disagree with Julie. It is clear that Lori's petition was dismissed without prejudice and that the Superior Court was merely elucidating two possible scenarios in which the case could be re-opened. When Lori and her children moved back to Indiana, their home state again became Indiana, and the Superior Court once again had jurisdiction to hear Lori's petition. That she never filed a petition in Georgia is irrelevant. Because Lori's petition was dismissed without prejudice, the Superior Court properly re-opened the petition, and Lori's claim does not fail for this reason.

## 3. *Verification*

 Finally, Julie contends that Lori's petition should have been dismissed because it was not properly captioned or verified as required by statute. Indiana Code section 31–16–2–3 requires that an action for child support must include the caption "In Re the support of _____," and Indiana Code section 31–16–2–4 requires that a petition for child support must be verified. Lori's petition did not comply with these statutes because it did

not include the required caption and was unverified.

While we do not condone the failure to comply with the procedural requirements of the statutes, at the outset or by amendment, we are mindful of Indiana Trial Rule 61, which provides as follows:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order in anything done or omitted by the court or by any of the parties is ground for granting relief under a motion to correct errors or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order or for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

T.R. 61.

Lori's failure to include a proper caption and to verify her petition simply does not affect the substantial rights of the parties, especially when we consider that at the heart of this case is the well-being of two minor children. To grant Julie's motion to dismiss would have the effect of depriving her children of needed financial support, and we are loath to take such a step based on purely procedural grounds. We conclude that Lori's errors in fashioning her petition were harmless, and we decline to reverse the Superior Court's denial of Julie's motion to dismiss on this basis.

## CONCLUSION

As to Julie's petition to vacate the adoption of her children, we find that the Circuit Court had authority to grant her petition for adoption in 1997, and it was not procured by fraud. As to Lori's petition for child support, we find that the Superior Court properly exercised its jurisdiction and that Lori did not fail to state a claim upon which relief may be granted.

The judgments of the Circuit and Superior Courts are affirmed.

SHARPNACK, J., and FRIEDLANDER, J., concur.