# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**DAVID E. COREY**
Deputies Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**LARRY D. STASSIN**
Layer, Tanzillo, Stasson & Babcock, P.C.
Dyer, Indiana



# IN THE
# COURT OF APPEALS OF INDIANA

IN RE THE ADOPTION OF: )
)
J.T.D. & J.S. (MINOR CHILDREN), )
CHILDREN TO BE ADOPTED. )
)
INDIANA DEPARTMENT OF CHILD )
SERVICES, )
) No. 45A03-1308-AD-310
Appellant, )
)
vs. )
)
N.E. (PROSPECTIVE ADOPTIVE PARENT) )
)
Appellee. )

APPEAL FROM THE LAKE COUNTY SUPERIOR COURT
The Honorable Calvin D. Hawkins, Judge
Cause No. 45D02-1306-AD-1
Cause No. 45D02-1306-AD-2

**March 12, 2014**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

This appeal involves a jurisdictional issue arising from the Lake County Courts. The minor children at issue are wards of the Department of Child Services ("DCS") and proceedings are pending in Lake County Juvenile Court for the involuntary termination of parental rights regarding the children. N.E., the children's former foster parent, attempted to intervene in those proceedings, but her petition was denied. Thereafter, N.E. filed a petition to adopt the children in Lake County Superior Court. DCS sought to intervene in the adoption proceedings, or in the alternative, requested that N.E.'s petition to adopt be transferred to the Juvenile Court. The Lake County Superior Court denied the DCS's motions. The DCS appeals and argues that the Lake County Superior Court was required to transfer N.E.'s adoption petition to the Juvenile Court pursuant to the Lake County Case Allocation Plan.

However, pursuant to statute, the Civil Division of the Lake County Court System, which includes the Lake Superior Court, has exclusive jurisdiction to adjudicate adoption petitions and therefore, we affirm, concluding that the Lake Superior Court properly denied DCS's motion to transfer.

**Facts and Procedural History**

DCS removed J.T.D., born on March 21, 2011, and J.S., born on September 1, 2012, from their biological Mother at birth because they were born drug positive. The Lake County Juvenile Court determined that the children were Children In Need of Services ("CHINS"). Biological Mother's and Father's parental rights to J.T.D. were terminated on November 8, 2012. And on or about April 26, 2013, the DCS filed a

2

petition to terminate Mother's parental rights to J.S. The underlying CHINS adjudication remains in effect.

J.T.D. and J.S. were placed in foster care with N.E., their Mother's cousin, and N.E. desired to adopt the children. However, on March 25, 2013, the DCS filed in the Juvenile Court a request for change of placement because N.E. had created a website, which contained a picture of one of the two children and disclosed confidential information concerning the children. The purpose of the website was to assist N.E. in raising funds to supplement her income because there were periods of time she could not work due to one child's medical needs. The Juvenile Court granted the DCS's request for change of placement and the children were removed from N.E.'s care.

On April 25, 2013, N.E. filed in the Juvenile Court a motion to intervene, which stated that she intended to pursue adoption of the children. After a hearing was held, N.E.'s motion intervene was denied.

Shortly thereafter, on June 3, 2013, N.E. filed in Lake Superior Court petitions to adopt J.T.D. and J.S. On June 12, 2013, in the Juvenile Court, N.E. filed a motion to reconsider the denial of her motion to intervene in the CHINS proceedings. The Juvenile Court denied the motion to reconsider and specifically found that the issue had already been addressed and the motion was not made in good faith because N.E. had filed petitions to adopt the children in Lake Superior Court.

On June 20, 2013, the DCS filed in Lake Superior Court motions to intervene in the adoption proceedings and motions to transfer the adoption proceedings to the Juvenile Court. The Court Appointed Special Advocate ("CASA") also filed similar motions.

Both the DCS and the CASA argued that pursuant to the Lake County Caseload Allocation Plan approved by the Indiana Supreme Court, all adoptions of minors must be filed in the Juvenile Court. The DCS and the CASA also argued that N.E.'s petitions to adopt the children were an improper collateral attack on the Juvenile Court's decision that it was not in the children's best interests to be placed in N.E.'s care.

A hearing was held on the motions on July 11, 2013. At the hearing, N.E. argued that pursuant to statute, the Lake Superior Court has probate jurisdiction, which includes exclusive jurisdiction to adjudicate adoption petitions, and the local rule does not supersede the statute. The Superior Court agreed with N.E. and denied the DCS's and the CASA's motions to intervene and transfer. The court then certified its ruling for interlocutory appeal, and our court accepted interlocutory jurisdiction.

**Standard of Review**

In this case, the DCS is challenging the Lake Superior Court's jurisdiction over these adoption proceedings. "Subject matter jurisdiction is the power to hear and determine cases of the general class to which any particular proceeding belongs." K.S. v. State, 849 N.E.2d 538, 540 (Ind. 2006). "A tribunal receives subject matter jurisdiction over a class of cases only from the constitution or from statutes." Georgetown Bd. of Zoning Appeals v. Keele, 743 N.E.2d 301, 303 (Ind. Ct. App. 2001). "Subject matter jurisdiction is an issue of law to which we apply a de novo standard of review." Lombardi v. Van Deusen, 938 N.E.2d 219, 223 (Ind. Ct. App. 2010).

**Discussion and Decision**

4

Our court has previously examined the nature of CHINS, termination of parental rights, and adoption proceedings, which is helpful to our review of the issues presented in this appeal.

> In a CHINS case, a juvenile court facilitates services, care, and custody of a CHINS, but does not create or rescind permanent family ties. Juvenile courts have exclusive original jurisdiction over CHINS cases.
> A [termination of parental rights] proceeding determines whether a parent-child relationship will be terminated. Probate courts have concurrent original jurisdiction with juvenile courts in proceedings on a petition to terminate the parent-child relationship involving a CHINS.
> Adoption establishes a family unit, "'sever[ing] the child entirely from its own family tree and engraft[ing] it upon that of another.'" As a result of the adoption, the adopted child becomes the legal child of the adoptive parent. *Probate courts have exclusive jurisdiction over all adoption matters. Thus, juvenile courts have no authority to create permanent parent-child ties through adoption or to rule on any other adoption matters.*

In re Infant Girl W., 845 N.E.2d 229, 239-40 (Ind. Ct. App. 2006) (internal citations omitted) (also stating that CHINS, termination of parental rights, and adoption proceedings "have divergent subject matter and remedies"), trans. denied (emphasis added).

Indiana Code chapter 31-19-2 establishes the procedures required for adoption of a minor child, and section 31-19-2-2 provides:

> (a) A resident of Indiana who seeks to adopt a child less than eighteen (18) years of age may, by attorney of record, *file a petition for adoption with the clerk of the court having probate jurisdiction* in the county in which:
>     (1) the petitioner for adoption resides;
>     (2) a licensed child placing agency or governmental agency having custody of the child is located; or
>     (3) the child resides.

(Emphasis added).  Consistent with this statute, Indiana Code section 31-19-1-2 provides

that the "probate court has exclusive jurisdiction in all adoptions matters."

Our court has also discussed the probate court's jurisdiction to adjudicate an

adoption petition over a child who is also the subject of CHINS or termination of parental

rights proceeding:

> As to the Probate Court's jurisdiction over the adoption case, we first restate that probate courts have exclusive jurisdiction over all adoption proceedings.  That there is a simultaneous CHINS and/or TPR proceeding does not in any way divest the probate court of its exclusive jurisdiction. But a concurrent TPR proceeding seems, at first blush, to complicate the analysis, inasmuch as probate and juvenile courts have concurrent jurisdiction over a TPR proceeding.  Nevertheless, it is apparent to us that the consent statute, Indiana Code section 31-19-9-1, disentangles this ostensible jurisdictional knot. Pursuant to the consent statute, although a probate court retains exclusive jurisdiction over an adoption case, [DCS]-which, during the pendency of a TPR proceeding, is the child's legal guardian—must be given an opportunity to consent to the adoption. If [DCS] refuses to consent to the adoption, the probate court must determine whether [DCS] was acting in the best interests of the child in withholding its consent. Ultimately, we are persuaded that the consent statute enables the probate court to retain exclusive jurisdiction over an adoption proceeding even as it respects the opinion of [DCS], which is the child's legal guardian and petitioner in the simultaneous TPR proceeding.

In re Infant Girl W., 845 N.E.2d at 240 (internal citations omitted).

Lake County does not have a separate probate court, but probate jurisdiction is

vested in the County's Civil Division.  Specifically, organization of the Lake County

Court system is described in Indiana Code section 33-33-45-21:

> (a) The court is divided into civil (including probate), criminal, county, and juvenile divisions. The work of the court shall be divided among the divisions by the rules of the court.
>
> (b) Seven (7) judges comprise the civil division. Four (4) judges comprise the criminal division. Four (4) judges comprise the county division. One (1)

judge comprises the juvenile division. However, the court by rule may alter the number of judges assigned to a division of the court if the court determines that the change is necessary for the efficient operation of the court.

See also Matter of Adoption of T.B., 622 N.E.2d 921, 924 (Ind. 1993) (observing that the Lake Circuit and Superior Courts "have concurrent jurisdiction over probate matters" and the "juvenile division does not have jurisdiction in probate matters").

In Matter of Adoption of T.B., our supreme court expressly stated that the Lake County "juvenile division does not have jurisdiction in probate matters and, thus, cannot assert jurisdiction in an adoption proceeding." Id. The DCS attempts to circumvent this holding by relying on the Lake County Caseload Allocation Plan, which the Lake County Courts adopted approximately seven years after T.B. was decided. Specifically, the DCS argues that the Lake Superior Court was required to transfer this adoption proceeding to the Juvenile Court pursuant to the Caseload Allocation Plan.[1] Under the Plan, which our supreme court approved, the Lake County Courts increased the caseload of the Juvenile Court by determining that the following case types would be "exclusively filed in the Juvenile Division:" the adoption of minors, adoption history cases, and "[g]uardianship for minors unrelated to litigation pending in other courts[.]"[2] Appellant's App. p. 23.

---

[1] Indiana Administrative Rule 1(E) requires that "[t]he courts of record in a county shall, by a local rule, implement a caseload allocation plan for the county that ensures an even distribution of judicial workload among the courts of record in the county."

[2] The Lake County Courts amended the Caseload Allocation Plan in 2008 effective in 2009, which was also approved by our supreme court. To further its goal of equalizing the distribution of cases within each division of the courts, the Lake County Courts determined that 10 non-CHINS juvenile adoption cases could be transferred "from the Juvenile Court to the Circuit Court and each Civil Division Court." Appellant's App. p. 40.

7

Pursuant to Indiana Code section 33-33-45-8, the Lake County Courts have the authority to "make and adopt rules and regulations for conducting the business of the court[.]" However, "[w]hile trial courts may establish local rules for their own governance, those local rules may not conflict with the rules established by this Court or by statute." State ex rel. Commons v. Pera, 987 N.E.2d 1074, 1078 (Ind. 2013) (citing Gill v. Evansville Sheet Metal Works, Inc., 970 N.E.2d 633, 645-46 (Ind. 2012) (citing Ind. Code § 34-8-1-4))).

In Pera, the Judges of the Lake Circuit and Superior Courts reassigned a Judge from the Superior Court's County Division to its Juvenile Division to fill a vacancy created by the resignation of the presiding Judge of the Juvenile Division. The Judges' decision to reassign Judge Schiralli was in accord with the local court rule promulgated in the Caseload Allocation Plan, the same Caseload Plan at issue in this appeal. Specifically, the Caseload Plan provides:

> In the event a new court is created or a court is vacated in the Superior Court, a sitting judge of the Superior Court may elect to serve in the new or vacated court. Should more than one judge wish to serve in a court under this provision, the judge with the most seniority shall prevail. In the event two or more judges with equal seniority wish to serve in a court, the decision will be made by lot.

Id. at 1077; see also Appellant's App. p. 25.

However, this local rule conflicted with Indiana Code section 33-33-45-21(e), which establishes that a judge, who was not appointed to the Lake Superior Court under the merit-selection process described in Indiana Code section 33-33-45-38, "is not eligible to be reassigned, rotated, or transferred to other divisions of the court." Because

8

Judge Schiralli was not appointed to the Lake Superior Court under that merit-selection process, the relators, who were all Lake County Magistrates, argued that Indiana Code section 33-33-45-21(e) prohibited his transfer from the County Division to the Juvenile Division. Pera, 987 N.E.2d at 1077.

Our Supreme Court disagreed with the Judges argument that section 33-33-45-2(e) could not be enforced because it conflicted with the Lake County Court's local transfer rule. Specifically, the court declared:

> The primacy of this Court's rules of practice and procedure, recognized in Indiana Code section 34-8-1-3 ("thereafter all laws in conflict with the supreme court's rules have no further force or effect") does not apply to the transfer rule because the transfer rule is not a rule of this Court. The Lake County courts adopted the transfer rule as part of their "Administrative Order Adopting A Plan For The Allocation Of Judicial Resources For Calendar Year 2000," in response to an order issued by this Court on July 16, 1999, requiring the development of local caseload plans; this Court reviewed and approved that plan, noting the Court intended to require periodic revision of the local plan. But our order approving the Lake County courts' plan was not a rule of this Court governing practice and procedure "promulgated and tak[ing] effect under the rules adopted by the supreme court," and, so, the transfer rule is not a rule of this Court as contemplated in Indiana Code section 34-8-1-3. Moreover, while trial courts may establish local rules for their own governance, those local rules may not conflict with the rules established by this Court or by statute. Consequently, we disagree with the Judges' assertion that the local transfer rule trumps, by operation of Indiana Code section 34-8-1-3, the prohibition on transfer of a non-eligible judge in Indiana Code section 33-33-45-21(e).

Id. at 1078-79 (internal and record citations omitted).

Here, we are presented with exactly the same issue the Pera Court addressed: whether Lake County's local rule, i.e. the Caseload Allocation Plan, trumps a statute, i.e. Indiana Code section 31-19-1-2, which provides that probate courts have exclusive jurisdiction over adoption matters. The DCS places undue emphasis on the fact that our

9

supreme court approved the Caseload Allocation Plan. See Appellant's Br. at 17. The Pera Court rejected this same argument and observed that the Caseload Allocation Plan is not a rule promulgated by the supreme court. 987 N.E.2d at 1078-79.

The DCS also claims that the Caseload Allocation Plan "should be read harmoniously" with the statutes declaring that probate courts have exclusive jurisdiction over adoption proceedings. Appellant's Reply Br. at 4. But the Caseload Allocation Plan removes adoption proceedings from the Civil Division, which has probate jurisdiction, and transfers adoption cases to the Juvenile Division. Therefore, the statutes conferring exclusive jurisdiction over adoption proceedings to probate courts and Indiana Code section 33-33-45-21, which vests the Lake County Civil Division with probate jurisdiction, cannot be harmonized with the Caseload Allocation Plan.

"A tribunal receives subject matter jurisdiction over a class of cases only from the constitution or from statutes." Georgetown Bd. of Zoning Appeals v. Keele, 743 N.E.2d 301, 303 (Ind. Ct. App. 2001). Our General Assembly has statutorily conferred jurisdiction of adoption proceedings exclusively to probate courts. In Lake County, the Civil Division has probate jurisdiction, and therefore, exclusive subject matter jurisdiction over adoption proceedings. DCS may not rely on local court rule, i.e. the Caseload Allocation Plan, to circumvent the Lake County Civil Division's exclusive subject matter jurisdiction over adoption proceedings.[3] For all of these reasons, we

---

[3] DCS observes that the Juvenile Court has adjudicated hundreds of adoption proceedings under the Caseload Allocation Plan. DCS complains that our holding will potentially place those adoptions at risk. This opinion addresses only the challenge of N.E. The finality of prior and pending adoption proceedings in the Juvenile Court has not been challenged and we do not address those proceedings.

conclude that the Lake Superior Court properly denied the DCS's motion to transfer this case to the Lake County Juvenile Court.[4]

Affirmed.

BRADFORD, J., and PYLE, J., concur.

---

[4] Although DCS's issue statement also challenges the trial court's denial of its motion to intervene, its argument in its brief is directed solely toward its motion to transfer the case to the Juvenile Court and its reliance on the Caseload Allocation Plan in support of that argument.