ATTORNEYS FOR APPELLANT
Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEY FOR APPELLEES
Larry D. Stassin
Layer, Tanzillo, Stassin & Babcock, P.C.
Dyer, Indiana

_____

# In the
# Indiana Supreme Court

FILED
Dec 04 2014, 2:03 pm

CLERK
of the supreme court,
court of appeals and
tax court

_____

No. 45S03-1406-AD-387

IN THE MATTER OF THE ADOPTION OF MINOR CHILDREN: J.T.D. AND J.S.:

INDIANA DEPARTMENT OF CHILD SERVICES,

*Appellant/Intervenor,*

v.

N.E.

*Appellee/Petitioner*
*Prospective Adoptive Parent.*

_____

Appeal from the Lake Superior Court, Nos. 45D02-1306-AD-1 and 45D02-1306-AD-2
The Honorable Calvin D. Hawkins, Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 45A03-1308-AD-310

_____

**December 4, 2014**

**Rush, Chief Justice.**

Local rules cannot confer, revoke, or override subject matter jurisdiction, but they may properly prescribe venue—the particular location among courts that have jurisdiction for cases to be heard. Here, the Lake Superior Court has four divisions, "civil (including probate), criminal, county, and juvenile," Ind. Code §§ 33-33-45-3, -21(a) (2008), none of which is a "separate probate court" that would have exclusive adoption jurisdiction, see I.C. § 31-19-1-2(a). N.E. filed two adoption petitions in one of the Civil Division courts, violating a local rule that all adoptions (a type of

probate case) must be filed in the Juvenile Division. The trial court, in turn, declined to transfer the cases to the Juvenile Division, and the Court of Appeals affirmed. Largely in an effort to adhere to dicta in one of our previous cases, it held the local rule impermissibly impinged on the jurisdiction of the Superior Court's "civil (including probate)" division. We disagree. The local rule does not impermissibly expand jurisdiction beyond statutory bounds, but simply prescribes venue—and like all local rules, it is binding on the courts and litigants. The trial court erred in refusing to transfer these adoptions to the Juvenile Division, and we reverse and remand accordingly.

**Facts and Procedural History**

J.T.D. (born in 2011) and J.S. (born in 2009) are siblings. Both tested drug-positive at birth, and were immediately removed from their parents. The Juvenile Division of the Lake Superior Court has adjudicated them both to be children in need of services (CHINS), and those CHINS cases are still open. The Juvenile Division terminated both parents' rights over J.S. in 2012, and a similar petition for J.T.D. remains pending.

The children's cousin N.E. was their foster parent and planned to adopt them. But on March 27, 2013, the Indiana Department of Child Services (DCS) petitioned to remove the children from her care after she violated her confidentiality agreement with DCS by using the children's confidential information, and other false or misleading information, on a fundraising website seeking donations to defray household expenses. The Juvenile Division found removal was in the children's best interests, and placed them in a new pre-adoptive foster home. The Juvenile Division later denied N.E.'s petition to intervene in the CHINS cases.

After the Juvenile Division denied her leave to intervene, N.E. filed petitions to adopt the children in Lake Superior Court 2, part of the court's Civil Division. But filing in that court contravened Lake County's Caseload Allocation Plan—a local rule requiring adoptions of minors, among other case types, "to be exclusively filed in the Juvenile Division," though the Juvenile Division may then transfer a limited number of such cases to the Circuit Court and each room of the Superior Court's Civil Division. Lake County adopted the Caseload Allocation Plan to comply with this Court's mandate that each county "by a local rule, implement a caseload allocation plan . . . that ensures an even distribution of judicial workload among the courts of record in the county." Ind. Administrative Rule 1(E). Citing the Caseload Allocation Plan, DCS and the Court Appointed Special Advocate (CASA) moved to intervene in the adoptions and transfer them to the Juvenile Division.

2

In the trial court, DCS argued that the Caseload Allocation Plan "expands the jurisdiction of the Juvenile Division to include all adoptions of minors, and it clearly says all adoptions of minors are to be exclusively filed in the Juvenile Division." But N.E. countered that because "local rules can't supersede legislative enactments," the statute creating the Lake Superior Court's "civil (*including probate*), criminal, county, and juvenile divisions" was controlling over the Caseload Allocation Plan and gave the trial court probate jurisdiction. Ind. Code § 33-33-45-21 (emphasis added). The trial court agreed with N.E. and denied the motion to transfer to the Juvenile Division. Its written order was summary, but it explained its rationale at the conclusion of the hearing:

> The weighted caseload [rule] is simply a methodology . . . to make sure that judges work, and that's about it . . . . So it's a paper process.
>
> Now having said that, . . . the [local] rules do not trump the statute. . . . They just don't.
>
> And all it takes is an individual who looks at [Indiana Code 31-19-2-2, requiring adoptions of minors to be filed "with the clerk of the court having probate jurisdiction"] to say, "I'm going to comply with the statute." And I could have said because of the weighted caseload, and still could say, "I'm going to transfer this case back to Juvenile Court."
>
> I'm not. I'm going to deny your motion, because I think it could be filed here. The law allows it to be filed here.

But the trial court also immediately certified its order for interlocutory appeal.

The Court of Appeals affirmed in a published decision, relying on the statutory division of Lake Superior Court into "civil (including probate), criminal, county, and juvenile divisions" and our previous statement that the County's "'juvenile division does not have jurisdiction in probate matters and, thus, cannot assert jurisdiction in an adoption proceeding,'" In re Adoption of J.T.D. and J.S., 5 N.E.3d 786, 790 (Ind. Ct. App. 2014) (quoting I.C. § 33-33-45-21 and In re Adoption of T.B., 622 N.E.2d 921, 924 (Ind. 1993)). On that basis, the Court of Appeals held that the "Civil Division has . . . exclusive subject matter jurisdiction over adoption proceedings," which the Caseload Allocation Plan, as a local rule, could not defeat. Id. at 792. We granted transfer.

**Standard of Review**

When, as here, "the facts before the trial court are not in dispute, then the question of subject matter jurisdiction is purely one of law," which we review de novo and without any deference to the trial court's determinations. GKN Co. v. Magness, 744 N.E.2d 397, 401 (Ind. 2001). Similarly,

interpreting a statute is a question of law that we review de novo, Justice v. Am. Family Mut. Ins. Co., 4 N.E.3d 1171, 1175 (Ind. 2014)—giving the statutory language its plain and ordinary meaning unless the statute indicates otherwise, because "'[t]he best evidence of legislative intent is the language of the statute itself,'" Hendrix v. State, 759 N.E.2d 1045, 1047 (Ind. 2001).

**Discussion**

### I. Because Lake County Has No "Separate Probate Court," the Exclusive Jurisdiction Provision of Indiana Code section 31-19-1-2 Does Not Apply.

As a threshold issue, we address the Court of Appeals' reliance on Indiana Code section 31-19-1-2(b), which provides that the "'probate court has exclusive jurisdiction in all adoption matters.'" J.T.D., 5 N.E.3d at 789 (quoting I.C. § 31-19-1-2(b)). But the first part of that statute unambiguously states that it applies only "to each Indiana county that has a separate probate court." I.C. § 31-19-1-2(a). So in Saint Joseph County, for example, this statute would confer exclusive adoption jurisdiction on that county's Probate Court, see I.C. § 33-31-1-1—which is created separately from either its Circuit Court under the Indiana Constitution and Indiana Code chapter 33-28-1, or its Superior Court under Indiana Code chapter 33-33-71. But in Lake County, by contrast, the "civil (including probate)" division is expressly established as a *division of* the Superior Court, I.C. § 33-33-45-21(a), and not a separate statutory court. The Court of Appeals was therefore correct to recognize that Lake County has no "separate probate court." J.T.D., 5 N.E.3d at 790 (citing T.B., 622 N.E.2d at 924). But that also means that, by its express terms, Indiana Code section 31-19-1-2(b) does not apply, and thus does not confer exclusive adoption jurisdiction on the Superior Court's Civil Division.

### II. The Lake Superior Court Is One *Court* of Broad Original, Concurrent Jurisdiction, Shared Among Its *Divisions*—So the Divisions' Caseloads Are a Matter of Venue, Not Jurisdiction.

Because Lake County has no "separate probate court" to exercise exclusive adoption jurisdiction under Indiana Code section 31-19-1-2(b), we turn to the statutes creating the county's Superior Court. Courts "receive[] subject matter jurisdiction over a class of cases only from the constitution or from statutes." Georgetown Bd. of Zoning Appeals v. Keele, 743 N.E.2d 301, 303 (Ind. Ct. App. 2001). And while Circuit Courts are created by the Indiana Constitution, see Ind. Const. art. 7, §§ 7–8, Superior Courts are created entirely by statute. Generally, they have "original and concurrent jurisdiction in all civil cases and in all criminal cases." I.C. §§ 33-29-1-1.5 (Supp. 2014) (applying to "standard superior courts"), -29-1.5-2(1) (Supp. 2014) (applying to all other superior

courts). But then the various chapters of Indiana Code article 33-33 (for Lake County, Indiana Code chapter 33-33-45) contain further provisions unique to each county's Superior Court system, which "are *in pari materia*" with the general provisions of Indiana Code article 33-29 "and should be construed together so as to produce a harmonious statutory scheme" if possible. Sanders v. State, 466 N.E.2d 424, 428 (Ind. 1984). Only if "the two statutes present an irreconcilable conflict" will "the more detailed statute . . . prevail over the less detailed" one. Id.

Here, the Lake County statutes expressly create one Superior Court and consistently refer to it as a single court: "There is established a superior court in Lake County (referred to as 'the court' in this chapter)." I.C. § 33-33-45-3. But that one *court* "is divided into civil (including probate), criminal, county, and juvenile divisions," with instructions that "[t]he work of the court shall be divided among the divisions by the rules of the court." I.C. § 33-33-45-21(a).

The parties dispute the nature of those divisions. If they are jurisdictional, then N.E. is correct that the Caseload Allocation Plan cannot alter them. Unlike rules promulgated by this Court, local rules "may not conflict with the rules established . . . by statute." State ex rel. Commons v. Pera, 987 N.E.2d 1074, 1078 (Ind. 2013). Thus, if only the Civil Division has probate jurisdiction, the Caseload Allocation Plan cannot properly assign adoptions to the Juvenile Division, and the trial court correctly refused to transfer these adoptions. But if the divisions are not jurisdictional, there is no conflict between the statute and the Caseload Allocation Plan—in which case "the court and all litigants subject to the [Caseload Allocation Plan] are bound by [it]," Gill v. Evansville Sheet Metal Works, Inc., 970 N.E.2d 633, 646 (Ind. 2012), and the adoptions should have been transferred as the Caseload Allocation Plan requires.

We conclude that the Lake Superior Court's four statutory divisions are not jurisdictional and therefore reverse the trial court.

**A. By Their Plain Language, Indiana Code Sections 33-33-45-3 and -21 Create Four Divisions of One Court, Authorized to Divide Caseloads Among Its Divisions.**

As discussed above, Lake Superior Court is a single unified court, referred to as such by the singular term "the court" throughout the chapter. I.C. § 33-33-45-3. So like all Superior Courts, it has "original and concurrent jurisdiction in all civil cases and in all criminal cases," including probate and thus adoptions as well, I.C. § 33-29-1.5-2(1), unless one of the Lake County-specific statutes

overrides that general rule, Sanders, 466 N.E.2d at 428. And one section of the chapter clearly does so, by declaring that Lake County's "juvenile court has *exclusive jurisdiction* over a child" taken into custody in the county for "an act that would be a misdemeanor traffic offense if committed by an adult." I.C. § 33-33-45-6(b) (emphasis added). But nothing in the section that creates the court's four divisions, I.C. § 33-33-45-21(a), nor anything else in the entire chapter, even mentions "jurisdiction" at all—let alone confers "exclusive" jurisdiction on any particular division. Reading the statute as a whole, it is unlikely that the General Assembly would draft such a subtle jurisdictional provision in section 21 after speaking so clearly in section 6. We are therefore reluctant to read the two-word parenthetical "(including probate)" as vesting exclusive probate jurisdiction in the Civil Division.

Moreover, interpreting the divisions as jurisdictional would render the very next sentence of the statute meaningless. Indiana Code section 33-33-45-21(a) contains two sentences: "The court is divided into civil (including probate), criminal, county, and juvenile divisions. The work of the court shall be divided among the divisions *by the rules of the court*." (emphasis added). Certainly "the subject matter jurisdiction of our courts is generally created by statute or constitutional provision," N. Ind. Commuter Transp. Dist. v. Chicago SouthShore and South Bend R.R., 685 N.E.2d 680, 695 (Ind. 1997), and a local rule cannot override a statute, Pera, 987 N.E.2d at 1078. But the "work of the court" could not possibly be "divided" between the divisions by local "rules of the court" as the statute contemplates if the divisions' names reflected hard-and-fast jurisdictional limits. N.E.'s interpretation, then, would violate the well-settled rule that "'[w]here possible, every word [of a statute] must be given effect and meaning, and no part is to be held meaningless if it can be reconciled with the rest of the statute.'" Pabey v. Pastrick, 816 N.E.2d 1138, 1148 (Ind. 2004) (quoting Hall Drive Ins., Inc. v. City of Fort Wayne, 773 N.E.2d 255, 257 (Ind. 2002)).

We therefore conclude that the Lake Superior Court's four divisions are merely *descriptive* of venue, not *prescriptive* of rigid jurisdictional boundaries. "Indiana courts have only such jurisdiction as is granted to them by the state constitution and statutes"—but "[v]enue and jurisdiction are not the same." Benham v. State, 637 N.E.2d 133, 136–37 (Ind. 1994). "[V]enue statutes and rules do not confer jurisdiction but rather prescribe the location at which trial proceedings are to occur from among the courts empowered to exercise jurisdiction." Id. at 137. Understanding the divisions to share the full subject matter jurisdiction of the Superior Court as a whole, and their names to be only a matter of venue that may therefore be varied by "rules of the court," is the only

6

way to harmonize those provisions. In other words, there is only one Lake County Superior Court, and its divisions are for administrative convenience and venue, not jurisdictional limits.

### B. Our Statement in In re Adoption of T.B. That the Juvenile Division Lacks Probate Jurisdiction Is Not Controlling.

This interpretation of the statute, however, runs counter to language in our 1993 decision in T.B. There, a child who had been adopted in Lake Circuit Court proceedings less than five years earlier had become the subject of a CHINS case in the Juvenile Division because of promiscuous, delinquent, and violent behavior. T.B., 622 N.E.2d at 922. The adoptive parent petitioned the Circuit Court to revoke the adoption, alleging that the Lake County Division of Family and Children Services (DCS's predecessor agency) fraudulently failed to disclose that the child had been sexually abused before the adoption. Id. at 923–24. The Circuit Court granted the petition, and the agency appealed, arguing that the Juvenile Division's exclusive jurisdiction over CHINS cases implicitly precluded the Circuit Court from exercising subject matter jurisdiction over any case that "conflicted with the [CHINS] proceeding." Id. at 923. On transfer, we rejected that argument and stated:

> In Lake County, the circuit court and superior court have concurrent jurisdiction over probate matters. The superior court of Lake County is divided into four divisions, civil (including probate), criminal, county, and juvenile. *The juvenile division does not have jurisdiction in probate matters* and, thus, cannot assert jurisdiction in an adoption proceeding. Either the civil division of the superior court or the circuit court could hear the adoption matter.

Id. at 924 (emphasis added) (citations omitted).

N.E. and the Court of Appeals rely heavily on this passage in support of their statutory analysis, while DCS responds that it is dicta, or at least superseded by Lake County's subsequent adoption of the Caseload Allocation Plan. On the latter point, DCS is mistaken—because, again, subject matter jurisdiction is conferred by constitution or statute, Chicago SouthShore, 685 N.E.2d at 695, and the Caseload Allocation Plan is a local rule that cannot override a contrary statutory provision, Pera, 987 N.E.2d at 1078. Therefore, the Caseload Allocation Plan cannot create jurisdiction where it would not otherwise exist. But we do agree that this passage of T.B. is dicta, and therefore not controlling.

"[S]tatements not necessary in the determination of the issues presented are *obiter dictum*. They are not binding and do not become the law." Koske v. Townsend Eng'g Co., 551 N.E.2d 437,

443 (Ind. 1990). And in T.B., the issue was not whether the Juvenile Division *lacked* adoption jurisdiction, but whether the Circuit Court *had* it—so discussing the extent of the Juvenile Division's probate jurisdiction was wholly unnecessary to the question at hand, the epitome of dicta. Next, the question in T.B. did not involve the statute creating the court's divisions, but rather harmonized an alleged conflict between two express jurisdictional provisions—whether the Juvenile Division's undisputed *CHINS* jurisdiction implicitly precluded the Circuit Court from exercising its otherwise-undisputed *adoption* jurisdiction. Finally, T.B. did not undertake any detailed statutory analysis—likely because the agency had expressly (and, it seems, improvidently) "concede[d] that the juvenile court does not have authority to revoke an adoption." Id. at 923 (emphasis added).

Accordingly, we are persuaded that T.B. does not preclude our analysis of Indiana Code section 33-33-45-21(a). Instead, we believe that the Lake Superior Court's divisions are imbued with the same broad subject matter jurisdiction as the court as a whole, and their statutory names are merely descriptive of venue. N.E. argues this cannot be, since it would counterintuitively permit adoptions to be filed in the Criminal Division. And while that is true as a jurisdictional matter—that is, an adoption judgment rendered in the Criminal Division would be merely voidable, not void—it overlooks Lake County's binding local rules for venue of various case types, which "divide the work of the court" as the statute authorizes. We therefore turn to those local rules.

### III. Because the Caseload Allocation Plan Did Not Contravene a Statute, the Trial Court Lacked Discretion to Retain Venue of These Adoptions.

The 2009 version of the Caseload Allocation Plan—the one in effect when N.E. filed these adoptions in the trial court—called for all adoptions of minors to be filed in the Juvenile Division:

> Effective January 1, 2000, the current case assignment of the Lake Superior Court, Juvenile Division shall be increased by the addition of the following casetypes to be exclusively filed in the Juvenile Division:
>
> i. Adoptions of minors,
>
> ii. Adoption History cases, and
>
> iii. Guardianships for minors unrelated to litigation pending in other courts.

DCS App. 23. But the trial court concluded that because it, too, had subject matter jurisdiction over adoptions, transfer of these cases pursuant to the Caseload Allocation Plan was not mandatory:

> . . . I could have said because of the weighted caseload, and still could say, "I'm going to transfer this case back to Juvenile Court."

8

> I'm not. I'm going to deny your motion, because I think it could be filed
> here. The law allows it to be filed here.

Tr. 20:15–20. That conclusion was only partially correct. An adoption granted by the Civil Division would not be *void* because it (like all of the Lake Superior Court's divisions, as discussed above) shares the full Superior Court's subject matter jurisdiction, which includes cases of this type.

But having *jurisdiction* over adoptions did not make the trial court a proper *venue*, because the Caseload Allocation Plan provided otherwise. Such local rules, "when adopted and published, . . . have the force and effect of law," Magnuson v. Billings, 152 Ind. 177, 180, 52 N.E. 803, 804 (1899), and are binding on both "the court and all litigants," Gill, 970 N.E.2d at 646. As we explained in Magnuson,

> A rule of court is a law of practice, extended alike to all litigants who come within its purview, and who . . . have the right to assume that it will be uniformly enforced by the court, in conservation of their rights, as well as to secure the prompt and orderly dispatch of business. Furthermore, a rule adopted by a court . . . becomes a law of procedure therein, in all matters to which it relates, until rescinded or modified by the court.

152 Ind. at 180, 52 N.E. at 804. And because the Caseload Allocation Plan is consistent with the controlling statutes, the trial court was bound by the Rule's venue provisions. Thus, N.E. was obligated to file her adoption petitions in the Juvenile Division; and when she failed to do so, the trial court was similarly obligated to yield venue to the Juvenile Division.

We note that subsequent to the Court of Appeals' decision, Lake County has amended the Caseload Allocation Plan to assign adoptions to the Circuit Court and certain courts of the Civil Division, effective the first day of 2015. Lake LR45-AR1-01(I)(13)–(14) (effective Jan. 1, 2015). At oral argument, DCS represented that the revision was solely a response to the Court of Appeals' decision, and that the overall preference of the Lake County courts would be to retain the system as it existed under the 2009 amendment. In view of today's decision, either version of the Caseload Allocation Plan is permissible, so we leave the promulgation of local rules to the local courts who must abide by them. For this case, it is sufficient to note that N.E.'s adoption petitions are subject to the Caseload Allocation Plan as it existed when the petitions were filed. We therefore reverse the trial court's denial of DCS's motion to transfer these adoptions to the Juvenile Division pursuant to the then-existing Caseload Allocation Plan.

**Conclusion**

The parties and both of the previous courts were all partly correct in their analyses. The trial court was correct that it did have subject matter jurisdiction over adoptions and that the Caseload Allocation Plan was a matter of venue and not jurisdiction. Yet DCS was correct that the trial court was bound by the Caseload Allocation Plan and therefore obligated to transfer the adoption to the Juvenile Division. Because nothing in Indiana Code chapter 33-33-45 restricts the probate jurisdiction of any of the Lake Superior Court's divisions, each division—including the Juvenile Division— is imbued with the same jurisdiction as the court at-large. Therefore, even though the Caseload Allocation Plan's provisions establish only venue and not jurisdiction, they are binding on the court and litigants. Lake County was free to adopt a Caseload Allocation Plan establishing exclusive venue for adoptions in the Juvenile Division as a matter of administrative convenience and efficiency, and that Rule is binding on the court and litigants.

Accordingly, we reverse the trial court's denial of DCS's motion to transfer and order these adoptions transferred to the Juvenile Division consistent with the Lake County Caseload Allocation Plan that was in effect at the time N.E. filed these adoptions.

Dickson, Rucker, David, and Massa, JJ., concur.