

# IN THE

# Indiana Supreme Court

Supreme Court Case No. 24S-CC-223

## Automotive Finance Corporation,
*Appellant*



FILED

Jan 23 2025, 10:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

–v–

## Meng Liu,
*Appellee*

---

Argued: September 12, 2024 | Decided: January 23, 2025

Appeal from the Marion Superior Court
No. 49D04-2009-CC-33233
The Honorable Cynthia J. Ayers, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 23A-CC-1468

---

**Opinion by Chief Justice Rush**

Justices Massa, Slaughter, and Molter concur.
Justice Goff dissents with separate opinion.

**Rush, Chief Justice.**

Across Indiana, judges, clerks, court reporters, bailiffs, and others are working to resolve over 1.5 million pending cases. In 2023, our trial courts disposed of over 1 million cases. Respect for the finality of judgments is thus crucial to the efficient functioning of our legal system. Finality conserves limited resources, provides certainty and stability, and protects the interests of parties by enabling closure and reducing prolonged litigation. While our trial rules recognize the importance of finality, they also provide litigants with tools to set aside a final judgment in limited circumstances. But courts must enforce the procedural and substantive requirements that cabin those tools.

Here, the trial court entered summary judgment against a defendant for an unpaid business debt. Within thirty days of that decision, someone else admitted in an unsworn letter to fraudulently signing the loan in the defendant's name. But the defendant did not file a motion to correct error or perfect an appeal. Nevertheless, on the defendant's motion several months later, the court set aside its judgment based on fraud under Trial Rule 60(B)(3). Applying our trial rules and well-settled case law, we hold that the trial court abused its discretion in granting this relief. The trial court could not use Trial Rule 60(B)(3) to grant relief on grounds that the defendant could have raised in a motion to correct error. And there is no evidence that the alleged fraud prejudiced the defendant's presentation of her case. We therefore reverse.

## Facts and Procedural History

This case presents an unfortunate, cautionary tale for individuals who represent themselves in civil litigation.

In 2018, Automotive Finance Corporation (AFC) extended a loan of a little over $100,000 to Monmars Automative Group LLC for use in its automobile sales business. As part of this financing, Monmars and Golden Dart Holdings LLC entered into a Demand Promissory Note and Security Agreement (the "Contract") signed by their managers/members: Meng Liu; her then-husband, Ning Ao; and Liu's friend, Xiaoqiao Yang. The

Contract promised that Golden Dart and the three individuals would make "full and prompt payment" to AFC if Monmars failed to pay. And a notary affirmed that Liu, Ao, and Yang had each "personally appeared" and signed the Contract.

In 2020, after Monmars defaulted on its payments, AFC filed a complaint against Monmars and its co-guarantors Golden Dart, Liu, Ao, and Yang. About three weeks later, Liu, who represented herself at the time despite speaking limited English, filed an unsworn letter with the trial court. The letter explained that she and Ao were now divorced, Monmars was Ao's company, and she and Yang either "did not sign the agreement" with AFC or "did so without [their] knowledge." That same day, Ao also filed an unsworn letter that stated Liu and Yang were "not involved" in Monmars and hadn't signed the documents.

In March 2022, AFC moved for partial summary judgment and designated an affidavit authenticating the execution and notarization of the Contract. Two weeks after that, Liu responded to the motion by filing another unsworn letter with the court in which she claimed that she and Yang were "not aware of [Ao's] loan from AFC" and asked the court to dismiss the claims against them. Liu also attached a "confession letter" from Ao and their December 2020 divorce agreement, which assigned the AFC loan to him. In the attached confession letter, which was also unsworn, Ao said he had "helped" Liu and Yang "to sign the contract" but hadn't explained what it was.

About five months later, the trial court held a hearing on AFC's motion for partial summary judgment, at which Liu and Yang appeared pro se and had the assistance of an interpreter. After the hearing, the court granted AFC's motion and entered final judgment against Monmars, Ao, Liu, and Yang, awarding AFC over $160,000. Within thirty days of that judgment, Ao filed an unsigned letter saying he wished to "appear in court to prove that he forged the signature[s]." Meanwhile, Liu filed a timely notice of appeal. In that notice, Liu stated that Ao had arranged for an "imposter" to sign in place of herself and Yang and that Ao could "testify in court." But after Liu failed to timely file an appellate brief, the Court of Appeals dismissed her appeal.

In the months following the trial court's entry of summary judgment, AFC filed motions for supplemental proceedings to collect its judgment. During that time, about six months after the judgment, Liu—now represented by counsel—requested an evidentiary hearing. At that hearing, Ao testified to using Liu's and Yang's information to apply for the loan and arranging for "two foreign students from China" to sign their names. And Liu testified that Ao had revealed his fraud to her during their separation—a separation which had ended with their divorce one year before AFC moved for summary judgment. Liu then moved for relief under Trial Rule 60(B)(3), arguing Ao's testimony amounted to "newly discovered evidence of fraud." AFC opposed relief, arguing the evidence wasn't newly discovered and Liu had failed to pursue the matter on appeal. The trial court granted Liu's motion, finding that Ao's testimony created "genuine issues of material fact" and showed Liu had a "meritorious defense." The court later granted Yang relief on the same grounds.

AFC appealed both decisions, and the Court of Appeals issued conflicting published opinions. In Yang's case, a majority of the panel reversed, concluding she hadn't shown that "fraud prejudiced her ability to present her case." *Auto. Fin. Corp. v. Yang*, 238 N.E.3d 649, 654 (Ind. Ct. App. 2024). But here, a majority of the panel affirmed, finding "sufficient evidence" that fraud "prevented [Liu] from presenting her case." *Auto. Fin. Corp. v. Liu*, 228 N.E.3d 1125, 1130 (Ind. Ct. App. 2024). Judge Brown dissented, noting Liu had failed to timely designate evidence in opposition to AFC's summary judgment motion or to argue that fraud prevented her from doing so. *Id.* at 1131–32 (Brown, J., dissenting).

With a split in precedent on an important issue implicating our trial rules, we granted AFC's petition for transfer. *See* Ind. Appellate Rule 57(H)(1). And, by granting transfer, we vacated the Court of Appeals' opinion in Liu's case. App. R. 58(A).

## Standard of Review

We review a trial court's decision under Trial Rule 60(B)(3) for an abuse of discretion. *Outback Steakhouse of Fla., Inc. v. Markley*, 856 N.E.2d 65, 72 (Ind. 2006). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances or if the court has misinterpreted the law. *T.D. v. State*, 219 N.E.3d 719, 724 (Ind. 2023).

## Discussion and Decision

In rendering final judgment, our trial courts "put an end to the controversy" before them. *Mak-Saw-Ba Club v. Coffin*, 82 N.E. 461, 462 (Ind. 1907). Accordingly, entering final judgment deprives a court of its "inherent power to reconsider, vacate, or modify any previous order." *Mitchell v. 10th & The Bypass, LLC*, 3 N.E.3d 967, 971 (Ind. 2014) (quotation omitted). Indeed, a final judgment can be modified only so far as the judgment itself, a statute, or court rules permit. *See Carter v. Allen*, 631 N.E.2d 503, 507 (Ind. Ct. App. 1994). This presumption of finality provides certainty and stability, allowing parties to rely on decisions as conclusive.

That said, our trial rules provide litigants with tools to set aside final judgments in limited circumstances. For example, a party can file a motion to correct error within thirty days of the court entering final judgment. Ind. Trial Rule 59(C). And Trial Rule 60(B) enumerates grounds for parties to obtain relief based on circumstances that couldn't be discovered in time for a motion to correct error. T.R. 60(B); *Bello v. Bello*, 102 N.E.3d 891, 894 (Ind. Ct. App. 2018). This rule also acknowledges "the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding or for fraud upon the court." T.R. 60(B). But this remedy is "extremely limited." *Stonger v. Sorrell*, 776 N.E.2d 353, 356 (Ind. 2002).

Each of these tools has procedural and substantive requirements that apply uniformly to all litigants. *See In re Adoption of J.T.D.*, 21 N.E.3d 824, 831 (Ind. 2014). This includes pro se litigants, who will be "held to the same standards as a trained attorney" and "afforded no inherent leniency

simply by virtue of being self-represented." *Zavodnik v. Harper*, 17 N.E.3d 259, 266 (Ind. 2014). Accordingly, a party proceeding pro se must "be prepared to accept the consequences of his or her action." *McCullough v. CitiMortgage, Inc.*, 70 N.E.3d 820, 825 (Ind. 2017) (quotation omitted). While trial courts may facilitate a fair hearing for pro se litigants by explaining "legal concepts in everyday language" and informing litigants "what is expected of them," they must enforce the law. Ind. Judicial Conduct Rule 2.2 & cmt. 5.

Here, AFC asserts that the trial court abused its discretion in granting Liu relief under Trial Rule 60(B)(3), arguing that Liu could have raised Ao's alleged fraud by designating evidence in response to AFC's motion for summary judgment or by moving to correct error after judgment was entered. Liu concedes that the evidence she presented in her Rule 60(B)(3) motion "had already been presented" to the trial court through the unsworn letters before AFC obtained summary judgment, but she contends that the court did not abuse its discretion in granting her relief.

We agree with AFC. In reaching that decision, we first outline how a litigant, such as Liu, can oppose summary judgment and seek relief in the trial court from a final summary judgment decision. We then explain why the court here misinterpreted the law in granting Liu relief under Trial Rule 60(B)(3).

## I. The trial court could not grant Liu relief from final judgment on the basis of fraud.

To explain why the trial court misinterpreted the law in granting relief to Liu based on fraud, we first set out how a party may oppose summary judgment and how they can challenge a judgment in the trial court once it becomes final. After clarifying the relevant trial rules and caselaw, we then apply them to this case. We ultimately conclude that the trial court improperly granted relief under Trial Rule 60(B)(3) as a substitute for a timely motion to correct error and a subsequent appeal. And we find Liu failed to show that Ao's alleged fraud prejudiced her ability to present her case.

### A. Parties challenging final judgments based on fraud must comply with procedural and substantive requirements.

Our trial rules require that parties receive a fair hearing before judgment, including summary judgment. The rules also lay out procedures for challenging final judgments. But these same rules cabin opportunities for relitigation in the interest of finality. As we explain below, a party can designate evidence at the summary judgment stage until the deadline expires. And once a judgment becomes final, they can timely show that an adverse party's fraud prejudiced the presentation of their case. But a trial court cannot grant relief without enforcing these requirements. Making exceptions would lead to disparate treatment of litigants and, by improperly permitting relitigation of issues already determined, undermine finality.

We begin by explaining how a party can oppose a motion for summary judgment. Summary judgment decides a case, or issues in a case, without a trial. This is appropriate "when—after drawing all reasonable inferences in favor of the nonmoving party—the designated evidence shows no genuine issue of material fact, and the movant is entitled to judgment as a matter of law." *Cmty. Health Network, Inc. v. McKenzie*, 185 N.E.3d 368, 377 (Ind. 2022). If the movant makes this showing, the nonmovant has thirty days to "serve a response and any opposing affidavits," T.R. 56(C), and designate evidence "showing an issue for the trier of fact," *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). If that evidence includes witness testimony, it must be presented under oath, such as by a sworn affidavit. *Ind. Univ. Med. Ctr. v. Logan*, 728 N.E.2d 855, 858 (Ind. 2000). Though Trial Rules 56(F) and (I) permit a trial court to extend the thirty-day limit, the court "cannot consider summary judgment filings" made after the deadline expires. *Borsuk v. Town of St. John*, 820 N.E.2d 118, 124 n.5 (Ind. 2005). And summary judgment cannot be "reversed on the ground that there is a genuine issue of material fact unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court." T.R. 56(H).

Once a trial court enters final summary judgment, Trial Rules 59 and 60(B) come into play. Trial Rule 59 gives a party thirty days—from when the court notes the judgment in the Chronological Case Summary—to file a motion to correct error. T.R. 59(C). That motion can raise a broad range of challenges, including newly discovered evidence. *See Weida v. Kegarise*, 849 N.E.2d 1147, 1150 (Ind. 2006) (noting that the trial rules do not list all the bases for a motion to correct error); T.R. 59(A)(1). Trial Rule 60(B) also enables a party to seek relief from summary judgment. But this rule "is meant to afford relief from circumstances which could not have been discovered during the period a motion to correct error could have been filed." *Bello*, 102 N.E.3d at 894. And thus, Rule 60(B) cannot be used as a substitute for a timely motion to correct error and a subsequent appeal. *See id.*

Relief under Trial Rule 60(B) is limited to enumerated grounds and applicable time limits. One such ground, which is relevant here, is for "fraud . . . of an adverse party." T.R. 60(B)(3).[1] Under this "limited exception to the general rule of finality of judgments," a party must show that fraud prevented them from "fully and fairly presenting" their case. *Outback Steakhouse*, 856 N.E.2d at 73–74. They must also demonstrate "a meritorious claim or defense" to ensure that granting relief would not be "an empty exercise." *Id.* at 73 (quotations omitted). And they must make these showings "not more than one year" after the judgment was entered. T.R. 60(B).

When a party seeking relief cannot meet Trial Rule 60(B)(3)'s requirements—such as when "the fraud is not chargeable to an adverse party"—they have two other ways to attack the judgment based on fraud. *Stonger*, 776 N.E.2d at 356–57. The first, recognized under Trial Rule 60(B)'s savings clause, is through an independent action requesting a trial court to "relieve a party from a judgment, order or proceeding." T.R. 60(B). But this "remedy is extremely limited" and is not an opportunity "to relitigate an issue that was or could have been litigated in the original

---

[1] Neither party's briefing discussed whether Ao qualified as an "adverse party" to Liu.

proceeding." *Shepherd v. Truex*, 823 N.E.2d 320, 325–26 (Ind. Ct. App. 2005). And the party must still show how fraud undermined the presentation of their defense. *See id.* at 326. Secondly, the savings clause also recognizes a trial court's "inherent power" to "set aside its judgment if procured by fraud on the court." *Stonger*, 776 N.E.2d at 357. But this must involve "an unconscionable plan or scheme" to "improperly influence the court's decision." *Id.*

All in all, our trial rules afford parties ample opportunities to oppose summary judgment and challenge a final judgment based on fraud. But in the interest of finality, these opportunities include procedural and substantive requirements. And trial courts cannot excuse any party—including a pro se litigant—from compliance with these constraints. Having laid out the applicable framework, we now turn back to this case to determine whether the trial court improperly granted Liu relief.

## B. Liu's request for relief based on fraud was both untimely and unsupported by any evidence that fraud impacted her defense.

AFC argues that the trial court, by granting Liu relief under Trial Rule 60(B)(3), abused its discretion in three ways: (1) by considering grounds that "could have been raised by a timely motion to correct errors and a timely direct appeal"; (2) by applying the Trial Rule 56 summary judgment standard instead of the Trial Rule 60(B)(3) standard; and (3) by granting relief without Liu showing that fraud prevented her from designating evidence in opposition to summary judgment. Though the first basis for reversal is sufficient to resolve this appeal, we agree with AFC on all three points.

The trial court misinterpreted the law by using relief under Trial Rule 60(B)(3) as a substitute for a timely motion to correct error and appeal. Within thirty days of the court noting final summary judgment for AFC, Ao informed the court he wished to admit to forging Liu's signature on the Contract. Liu then filed a notice of appeal saying Ao could testify about his imposter scheme. Thus, assuming Liu had newly discovered

evidence of Ao's alleged fraud, she could have raised it in a timely motion to correct error under Trial Rule 59 and subsequently appealed a denial of that motion. But as a motion under Trial Rule 60(B) cannot be used as a substitute for either of those steps, it was improper for the trial court to grant Liu relief under Rule 60(B)(3).

The court also misinterpreted the law in two other ways. It granted Liu relief upon finding that Ao's testimony demonstrated "genuine issues of material fact." But by that time, the thirty-day period for considering new evidence on summary judgment had long since expired. Additionally, the testimony Ao and Liu gave did not satisfy the Trial Rule 60(B)(3) fraud standard. Liu's own testimony indicated Ao had disclosed his fraud to her during their separation. And their divorce settlement, executed in December 2020, assigned the AFC loan to Ao alone. As such, Liu was in a position to designate evidence of fraud at the summary judgment stage in 2022. We thus reach the same conclusion here as former Chief Justice Shepard did in his opinion for the majority in Yang's case: the evidence of Ao's alleged fraud in executing the Contract related to the merits of AFC's claim; it didn't show how that fraud prejudiced Liu's ability to present her case. *See Yang*, 238 N.E.3d at 654; *see also Auto. Fin. Corp. v. Kayiji*, 203 N.E.3d 1046, 1051 (Ind. Ct. App. 2022) (finding that a co-defendant forged the defendant's signature on a loan and promised to get him out of the ensuing lawsuit but that neither act prevented him from presenting his case).[2]

While it is regrettable that Liu failed to timely file sworn affidavits or properly designate evidence to show that she did not knowingly sign the Contract, Ao's alleged fraud didn't keep her from doing so. Liu's evidence of fraud did not, therefore, warrant relief under Trial Rule 60(B)(3). Nor,

---

[2] The dissent chides us for using our "discretionary review" to reverse a "just outcome." *Post*, at 1. We needed to grant transfer to resolve a split of precedential authority—on the same facts—concerning the scope of relief available under Trial Rule 60(B)(3). *See* App. R. 57(H)(1). And by resolving that split, we've ensured the consistent and impartial application of our trial rules for all litigants. Moreover, considering the fluctuating narratives Liu and Ao offered to the trial court, which the dissent highlights, *see post*, at 1–2, it is unclear whether the lower courts reached a "just outcome," *id.* at 1.

for the same reason, could such evidence support relief through an independent action. *See Shepherd*, 823 N.E.2d at 326.

In sum, the trial court misinterpreted the law in granting Liu relief under Trial Rule 60(B)(3) and thus abused its discretion. We sympathize with Liu over her now ex-husband's apparently fraudulent execution of the Contract and her subsequent liability for the debt. We also sympathize with Liu's difficulties understanding English and appreciate that she was not represented by counsel until later in the proceedings. But our sympathies aside, Liu did not follow the legal avenues available either to oppose AFC's motion for summary judgment or to raise Ao's alleged fraud in a motion to correct error once final judgment was entered. To conclude otherwise—and make an exception for Liu on this record—would amount to disparate treatment in this case and lead to relitigation of previously determined issues in future cases. Such a result would significantly undermine the finality of judgments.

## Conclusion

For the reasons explained above, we reverse the trial court's decision to grant Liu relief from judgment under Trial Rule 60(B)(3) and remand for the court to reinstate summary judgment for AFC.

Massa, Slaughter, and Molter, JJ., concur.
Goff, J., dissents with separate opinion.

ATTORNEY FOR APPELLANT AUTOMOTIVE FINANCE
CORPORATION
Joshua W. Casselman
Rubin & Levin, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE MENG LIU
Randall R. Shouse
Shouse & Langlois
Indianapolis, Indiana

**Goff, J., dissenting.**

I respectfully dissent.

The Court's decision today leaves Meng Liu, a non-native English speaker who was unrepresented for most of the proceedings, liable for $163,097.99, despite being the victim of fraud. App. Vol. 2, p. 9. Automotive Finance Corporation (AFC) obtained a summary judgment against Liu based on a forged loan agreement she never signed. No one questions that she is a victim of fraud, so the trial court granted Liu relief from the judgment under Indiana Trial Rule 60(B), and the Court of Appeals affirmed. Because the trial court and Court of Appeals have corrected this fraud, I would not use this Court's discretionary review under Indiana Appellate Rule 57(H) to reverse a just outcome.

A party can file a motion under Trial Rule 60(B) not more than one year after a judgment to seek relief when the judgment was obtained through "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party," and when the party alleges a "meritorious claim or defense." Ind. Trial Rule 60(B)(3). In *Outback Steakhouse of Florida, Inc., v. Markley*, this Court held that "Indiana courts applying the 'fraud' provision of subsection (B)(3) of Indiana Rule 60 have required a movant to show that fraud prevented the movant from **fully and fairly presenting** the movant's case." 856 N.E.2d 65, 73 (Ind. 2006) (emphasis added). In my view, the trial court did not abuse its discretion in granting Liu relief under this rule.

Liu's then-husband, Ning Ao, obtained a loan from AFC by forging Liu's signature on the loan document. Ao had a student from China use Liu's identification card to impersonate her in front of a notary public and forge Liu's signature. When AFC first filed its complaint, Liu sent a letter to the trial court saying, "Xiaoqiao Yang and I did not sign the agreement with the AFC or did so without our knowledge." App. Vol. 2, p. 49. In Ao's "confession letter" that was submitted during the summary judgment proceedings, Ao said that he "helped" Yang and Liu sign the loan. *Id*. at 121, 122. And in another letter submitted during the summary

judgment proceedings, Liu said she was "not aware of [Ao's] loan from AFC. He simply explained that his company needed a signature from an American citizen." *Id.* at 121. These letters during the summary judgment stage suggest that Liu did not sign the documents or might have signed them without fully understanding them. The first time Liu specifically alleged forgery was in the Notice of Appeal **after** summary judgment was entered. In the Notice, she said, "[Ao] had an imposter take [her] place to sign and get notarized." *Id.* at 138. In the evidentiary hearing for supplemental proceedings, Liu testified that during their separation, Ao "told [her] the truth, that he used [her] and Xiaoqiao Yang's name[s] to apply for the loan." Tr. Vol. 2, p. 15. The Court reads this to mean Liu was aware of the forgery before summary judgment was entered. But the trial court could have reasonably concluded from Liu's testimony that even though she knew Ao used her name, she was not aware of the forgery specifically at the time and might have thought she signed the documents without understanding them. This is sufficient to affirm the trial court's conclusion that fraud occurred, and the fraud prevented Liu from presenting her defense during the summary judgment stage. Liu didn't have the opportunity to litigate fraud in her original proceeding, and Ao's fraud undermined her defense.

As for Liu's appeal, it was ultimately dismissed on procedural grounds. Liu appealed the initial judgment but did not file an appellant's brief, so her appeal was dismissed "with prejudice." App. Vol. 2, p. 146. Any "issue which was raised by, or could have been raised by a timely motion to correct errors and a timely direct appeal may not be the subject of a motion for relief from judgment under T.R. 60." *Snider v. Gaddis*, 413 N.E.2d 322, 326 (Ind. Ct. App. 1980). But, ultimately, the merits of Liu's fraud claim had never been adjudicated. The trial court and Court of Appeals recognized this, and therefore granted her equitable relief from AFC's judgment. Given the trial court's inherent power to modify an inequitable judgment, I would hold that the trial court did not abuse its discretion in granting Liu relief when her claim was never decided on the merits. *See State v. Huffman*, 643 N.E.2d 899, 901 (Ind. 1994) (stressing that a "court has the power to revisit prior decisions of its own or of a coordinate court in **any circumstance**," though especially in

"extraordinary circumstances such as where the initial decision was clearly erroneous and would work **manifest injustice**") (internal citation and quotation marks omitted) (emphases added).

To protect its "law-giving function," this Court has "authority to select what it will consider from the trial courts or the intermediate court." Randall T. Shepard, *Changing the Constitutional Jurisdiction of the Indiana Supreme Court: Letting a Court of Last Resort Act Like One,* 63 Ind. L.J. 669, 680 (1988). As the state's court of last resort, we should reserve our discretionary review for the most significant issues. Here, the Court in a well-reasoned opinion emphasizes issues of finality as "crucial to the efficient functioning of our legal system." *See ante,* at 2. But in doing so, the Court uses our limited resources to reverse a trial court that was trying to correct an obviously wrong outcome. Finality doesn't always take priority over fairness. "Finality and fairness are both important goals," but when "faced with an apparent conflict between them, this Court unhesitatingly chooses the latter." *State v. Collier*, 61 N.E.3d 265, 268 (Ind. 2016) (quoting *Huffman*, 643 N.E.2d at 901, in the context of a Trial Rule 60(B)(8) claim). And "[a]lthough our procedural rules are extremely important, it must be kept in mind that they are merely a means for achieving the ultimate end of orderly and speedy justice." *Am. States Ins. Co. v. State ex rel. Jennings*, 283 N.E.2d 529, 531 (Ind. 1972). When "invoking them would defeat justice … they acquire the position of being the ends instead of the means." *Id.* We should tread carefully to give trial courts the necessary discretion to address fraud and preserve confidence in the judiciary rather than focusing on a less critical issue.[1]

Liu should never have been liable for this debt in the first place because she never signed the loan documents. Liu is not a native English speaker,

---

[1] The Court insists we "needed" to grant transfer to resolve a split in Court of Appeals' decisions "on the same facts." *See ante*, at 10 n.2. But rather than **compelling** our intervention, a conflict in Court of Appeals' decisions presents one of several "principal considerations" for us when deciding whether to grant transfer as "a matter of judicial discretion." Ind. Appellate Rule 57(H). And, in my view, Liu's case is not "on the same facts" as Yang's. The dynamics of Liu's relationship with Ao, being once married to him, were arguably different than Yang's, and Yang did not seek transfer to this Court.

lives in Florida, was unrepresented during most of the proceedings, and was defrauded by her own (now former) husband. The trial court and Court of Appeals used their authority to correct this outcome and grant Liu relief as the victim. And instead of letting this just result stand, we have used our limited discretion to reverse. Because I would let the Court of Appeals decision stand, I respectfully dissent.